(Decided 17th July, 1867.)

---

The State of Maryland *vs.* John Elborn.

*Indictment—Criminal Law.*

In an indictment founded on the 122d section of Article 30 of the Code of Public General Laws, charging an assault by unlawfully shooting at a certain person, and also an assault by attempting maliciously and unlawfully to discharge a loaded pistol at the same person, contrary to the form of the Act of Assembly, &c., it is necessary to charge the intent with which the act is done, in the words prescribed in the Code, and an omission to do so, renders the indictment insufficient, and it will be so held upon demurrer.

In an indictment for an offence created by statute, the offence must be described in the words of the statute, and when they are descriptive of the offence, it is necessary that the defendant should be brought within all the material words of the statute.

Writ of Error to the Circuit Court for Queen Anne's County.

---

State of Maryland *vs.* Elborn.

---

No statement of the facts of the case, in addition to such as will be found in the opinion of the Court, is deemed necessary.

*Thomas J. Keating* and *A. Randall,* (*Attorney General,*) for the State.

The Act of Assembly, on which the indictment in this case was founded, was intended to suppress particular crimes, against which its provisions are specifically directed, and which at that time prevailed to an alarming extent, the ordinary provisions of the criminal law being found inadequate to their suppression, and it should therefore receive a liberal construction to prevent these crimes. Act of 1853, ch. 69; Code of Pub. General Laws, Art. 30, sec. 122; Code of Pub. Local Laws, Art. 4, sec. 155. The Act of Assembly in its language is so similar, often identical with the language of the Act of 1 Victoria, ch. 85, sec. 4, that the Court must be satisfied that this latter statute was before the legislature in 1853. If in comparing this statute with our Acts of Assembly, it be clearly seen, that although this statute, from the identity of much of its language, was the pattern of our Act, yet in some of its very important provisions, obvious and essential changes were made in our Act, we must hence conclude that such changes indicated a different intent, which the Court will do all in their power to effectuate. This is exemplified by the English statute: after enumerating very much in the language of the Act of 1853, ch. 99, certain acts to be punished, it *annexes to them all* these words: *"with intent in any of the cases aforesaid, to maim, disfigure or disable, or to do some other grievous bodily harm to such person."* Whereas, the Act of 1853, ch. 99, annexes this intent to only *one* of the enumerated forbidden acts, *" or shall beat,* &c., with intent,*" &c. This restriction of the intent, to this one act forbidden, is further shown from the consideration of the great difficulty Courts of justice

have always had in their efforts to punish offences done with a special intent, and the desire manifested to be relieved of the necessity of charging and proving such special intent, by making crimes punishable because of their own enormity and criminality, without regard to any special intent in committing them. Instances of this difficulty of conviction among the thousands are the following: *Brigg's Case,* 1 *Lewin's Crown Cases,* 66; *Jennings' Case,* 2 *Lewin's Crown Cases,* 130; *Rex vs. Cruse & Wife,* 34 *Eng. Com. Law,* 522; *Rex vs. McDermot,* 1 *Russ. & Ryan,* (1 *Eng. Crown Cases ;*) *State vs. Neal,* 37 *Maine,* 468; *State vs. Negro Bill,* 3 *Harrington,* 571.

The great object of this law will be defeated if you require that the intent with which a man unlawfully shoots at another must be alleged, and proved to have been done with a view to maim, disable or disfigure. How can such an intent be proved? The act may kill or maim or disfigure, or do no harm, and the man who shoots may intend all or none of these consequences. He may shoot without any special intent whatever. It does seem that this law, to give it any efficacy, must mean to punish the *unlawful shooting* at any one, no matter with what intent done, no matter if done without any particular intent. It was intended to punish the unlawful act, though done without any particular intent, and though no specific injury resulted to any one from it. It will be for the Court to make the discrimination in the guilt of the convicted, and punish him by confinement between the limits of the law, six months or ten years, depending upon the decision of the Court as to the character of the crime; construction of penal laws is not to defeat the obvious intent. *Keller et al. vs. The State,* 11 *Md. Rep.,* 525.

The grammatical construction of this law does not make the intent with which the act is done, an ingredient of the crime, of "*unlawfully shooting at any person,* or in any manner unlawfully and maliciously attempting to

discharge any kind of loaded arms, at any person," or "of unlawfully and maliciously stabbing, cutting or wounding any person;" but that construction does require, that the intent shall constitute an ingredient of the crime "of assaulting, or assaulting and beating any person, with *intent* to maim, disfigure, or disable such person, or *with intent* to prevent the unlawful apprehension of any party for any offence," &c.

This law does not require that the intent shall be set forth as an ingredient of the crime in the first three cases provided for, because the acts themselves, and the weapons used, do too plainly manifest the criminal intent, and render unnecessary those averments of the intent—but in the two latter cases, the acts done may be equivocal as to the intent, and require that particular intent be averred as an ingredient to constitute the crime. *Roscoe's Criminal Law*, 287, *note* 1, 364.

*Henry M. Murray*, for the appellee.

The only question for the determination of this Court is, whether by the Act of Assembly of 1853, ch. 99, an indictment charging the offence to have been committed, by shooting as in this case, can be sustained, unless it contain a charge or allegation of intent. This was the sole question before the Court below, which decided that an "allegation of intent" was necessary; from this decision the State appealed. The appellee will insist, that the indictment in this cause is for a common law offence only, and that if the State sought to try him for a statutory offence, to wit: *an intent to maim, disfigure or disable*, it was necessary to set out the offence in the indictment, with as much precision as the same is described in the statute. *Arch. Crim. Plead.*, 46, *a.* Of this offence he is not charged, and is not bound by the law to answer the same, under the statute; because the very gist and object of it was to punish the intent to maim, &c., whether the

intention be effected in the act or not. In every indictment, for an offence arising under a statute, the indictment "must with certainty and precision charge the defendant to have committed or omitted the acts under the circumstances, and with the intent mentioned in the statute, and if any one of these ingredients be omitted, the defendant may demur, move in arrest of judgment, or bring a writ of error." *Arch. Crim. Plead.*, 46, *a; Whar. Crim. Law, sec.* 371. The object of this appeal is to ascertain by the judgment of this Court whether the appellee was amenable under the statute, or at common law, and punishable accordingly; in the one case it is fine and imprisonment, in the other, confinement in the penitentiary. The misdemeanors charged in the indictment, if attended by the alleged circumstances, are nothing more than an aggravated assault at common law, and the party, if guilty, is punishable at common law. If the State wished to try and punish him under the statute, it was necessary, in conformity with authoritative precedent, to set out in the indictment the crime as denounced in the Act of Assembly.

The object of the legislature in passing the act of 1853, and the remedy thereby effected, are transparent. Prior to the passage of that Act the offence of shooting at any person with intent to maim, disfigure or disable him, was only an offence at common law, and punishable by fine and imprisonment. So with the attempt maliciously to discharge loaded arms, &c., or to stab, cut or wound with intent, &c. In all these cases, the defendant was indicted at common law, and the atrocious circumstances were brought out in the evidence and considered by the Court in the sentence. The intent at common law forming no ingredient of the offence, it was unnecessary to allege it in the indictment. But the legislature considering the state of affairs then existing thought the punishment of fine and imprisonment too light, and imposed that of con-

finement in the penitentiary. The object of the legislature was to punish with high and degrading and long continuing atonement offences that had become too frequent, perhaps, by reason of light and trivial punishment.

CRAIN, J., delivered the opinion of this Court.

This case comes up on a writ of error to the Circuit Court for Queen Anne's County, and it is admitted by the record, that the only question for our determination is, whether by the Act of Assembly of Maryland, an indictment charging the offence to have been committed by shooting can be sustained, unless it contains a charge or allegation of intent. The indictment in this case is founded on the 122d section of Article 30, of the Code of Public General Laws, and contained three counts. First, for an assault by unlawfully shooting at a certain John W. Downes against the form of the Act of Assembly; second, for an assault by attempting maliciously and unlawfully to discharge a loaded pistol at Downes against the Act of Assembly; and third, for a common assault. To this indictment the defendant filed a general demurrer as to the first and second counts. This demurrer was sustained by the Court and judgment entered for the defendant. We are of opinion, from an examination of the section of the Code on which this indictment is founded, that the Circuit Court was correct in sustaining the demurrer to these two counts in the indictment.

It is a well settled general principle of criminal law, that in an indictment for an offence created by the statute, the offence must be described in the *words* of the statute, and when the words of the statute are descriptive of the offence, it is necessary that the defendant should be brought within all the material words of the statute. 1 *American Criminal Law*, 364, and 1 *Archbold's Criminal Law*, 86, 87.

Under this statute or section of the Code, it is a material

ingredient to charge the intent with which the act was done in the words prescribed in the statute. Penal statutes are to be construed strictly, and the words of the statute are not to be extended or enlarged by implication ; the language used in this section of the Code is very intelligible, and we must give it effect according to its plain and obvious meaning, which requires that the intent with which the assault was made must be charged in the indictment in the language of the statute, for unless this was the true interpretation of the statute, what was only a misdemeanor at common law to be punished by fine and imprisonment, would become a felony to be punished by confinement in the penitentiary. In our opinion such was not the intention of the law, and the two counts in this indictment are defective in not averring in the language of the Act, that the shooting was done with intent to maim, disfigure or disable Downes, and we therefore concur with the Circuit Court in their judgment on the demurrer.

*Judgment affirmed.*

(Decided 17th July, 1867.)