## FOLEY v. STATE.

HOMICIDE—INSTRUCTIONS—SELF-DEFENSE— EVIDENCE—PRESUMPTIONS —DYING DECLARATIONS—WAIVER OF OBJECTIONS—TESTIMONY OF DECEASED WITNESS—WITNESSES.

1. On a trial for homicide, where the defendant attempts to justify the killing on the ground of self-defense, an instruction is fatally erroneous which states that before the jury can acquit they *must be satisfied* that the several facts necessary to constitute self-defense enumerated and explained in the instruction, were, by the evidence, proved.

2. Such instruction, at least, erroneously imposes upon the defendant the necessity of establishing his defense by something more than a preponderance of the evidence; so that if the jury believed that the defense was supported by the weight of the evidence, but were not *satisfied* of any of the necessary facts, it would be their duty, under the instruction, to find against the defendant on that issue.

3. Where a defendant attempts to justify a killing on the ground of self-defense, it is not a presumption of law, nor necessarily true as a matter of fact, that the deceased was intentionally killed.

4. It is not a presumption of law, nor necessarily true as a matter of fact, that, when one kills another in self-defense, he intended to kill, but one may kill another in self-defense without any intention or expectation that his assailant shall be killed.

5. On a trial for homicide an instruction is erroneous which states that the claim of self-defense presupposes that the

deceased was intentionally killed, and that when one kills another in self-defense he intends to do it; though, if it be clear from the evidence that the killing was intentional, it may not be prejudicial, or reversible error.

6. To render a paper alleged to contain the dying declarations of the deceased admissible as evidence of such declarations, on a trial for homicide, it must have been read over to the deceased, and signed or assented to by him.

7. Where the statements in a paper alleged to contain the dying declarations of the deceased were written down by a physician in attendance upon him, and the paper was signed and sworn to by him and another physician and a third person, who were present, but it was not read over to the deceased nor signed by him. *Held*, that the paper was not itself evidence of the dying declarations, but might be used as a memorandum to refresh the memory of the witness.

8. The admission of such paper, however, may not be prejudicial, where the two physicians were present as witnesses at the trial and testified that the writing contained substantially the dying declarations of the deceased, since they were competent to testify to the declarations, refreshing their recollection by reference to the writing, and the error would be technical, rather than substantial.

9. The exception to the rule excluding hearsay testimony, which admits dying declarations on the ground of necessity, extends only to cases of homicide where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations.

10. If the dying declarations relate to former distinct matters, they do not come within the reason of the exception, and are not admissible.

11. It was prejudicial error to admit in evidence dying declarations of the deceased that defendant and himself had had frequent quarrels, and defendant had, in effect, challenged him to fight with pistols some days before the transaction which resulted in the killing.

12. Where defendant objected to a paper alleged to contain the dying declarations of the deceased on the grounds that it was not properly authenticated, and that the previous relations between deceased and defendant could not be shown

by dying declarations, the error in admitting statements in the paper of such previous relations was not waived by the defendant insisting, after the paper was admitted over his objections, that the address and jurat be read with the rest of the paper, and his counsel, so insisting, stating that if any of the paper was competent all of it was.

13. It is error to permit, over objection, a witness to testify to a portion only of what a deceased witness testified to at a former trial, upon a particular subject where such witness is unable to give the substance of all such former testimony upon that subject, but remembers only a part of it.

14. Where a witness called to testify to the statements of a deceased witness at a former trial does not undertake to state, in substance, the whole of such former testimony on the subject which he is called to prove, but is unable to remember such testimony except in part, he is incompetent to testify on the subject.

15. To be competent to testify to the statements of a deceased witness at a former trial, the witness must be able to state, in substance, the whole of what was said on the particular subject which he is called to prove.

[Decided June 3, 1903.]                    (72 Pac., 627.)

ERROR to the District Court, Carbon County, HON. RICHARD H. SCOTT, Judge of First Judicial District, presiding.

The plaintiff in error, M. W. Foley, was informed against for murder in the first degree in the County of Uinta. Change of venue was taken to Carbon County, and after the case was removed to Carbon County a change of judge was applied for and granted. Hon. Richard H. Scott of the First Judicial District was called in to try the case. The case came on for trial in June, and was tried by jury regularly empaneled, which jury disagreed and was discharged by the court. The case was again set for trial. A motion for continuance was filed. On the 2d of July, A. D. 1900, the judge overruled the motion for continuance and ordered that the case proceed to trial. A portion of the regular panel of the trial jury having sat in

the former trial, an objection was made to the regular panel by the defendant, which objection was sustained by the court. An objection was further made by the defendant to drawing the jury from the box containing the names of persons residing within five miles of the county seat. This objection was sustained by the court. The court then ordered that an open venire be issued and placed in the hands of the sheriff, requiring him to summon a certain number of jurors named in the order from the body of the county. Counsel for defendant objected to this order of the court. In due time the venire was returned and a jury selected. The jury was selected and sworn and the case proceeded to trial. After the case had been called for trial a challenge was offered to the array, which was denied by the court. The case was tried and the jury returned a verdict of guilty of murder in the second degree. Motion for a new trial was filed, overruled by the court, and the case came up on error. Only a part of the evidence was preserved in the record.

*McMicken & Blydenburgh,* for plaintiff in error.

The question of the method in which the jury was selected we take as a very serious and vital one. Exception was taken to the order of the court ordering an open venire, a challenge was made to the panel and array when the sheriff returned it, and every step taken by the court giving power to the sheriff to select the jury was objected and excepted to.

The intention of the statute is to take it out of the power of the sheriff to select a jury, and, although we do not deny that whenever a time occurs in the trial of a case or in the selecting of a jury for a case when there is no mode whatever prescribed by statute for the selection of a jury or the obtaining of talesmen, that there is an inherent power in the court to obtain a jury by the methods in vogue at common law, yet we maintain that it is gross error when a court brushes aside statutory provisions and

annuls by his orders in a criminal case the very objects
and purposes for which the statute is enacted.

The jury law in operation at the time of this trial is
contained in Sections 3340-3390, Revised Statutes. This
law provides how the jury list shall be made; the officers
who shall make it; the time, and all the pre-requisites of
placing the names in jury box No. 1, which box is pre-
sumed to contain, when the list is complete, the names of
every qualified juror within the county.

At the time when the order directing an open venire
was made the court had considered two objections or pa-
pers filed in the case, one a motion to quash the panel that
was in attendance upon the court, and the other an ob-
jection to being tried by a jury selected out of the five-
mile limit box. The court sustained the last objection on
constitutional grounds; the State confessed the first mo-
tion to the quashing of the panel, but the court, notwith-
standing that confession in the same order, ruled that the
boxes are in compliance with law. What then was the
situation? The regular panel having been quashed, there
were no jurors in attendance upon the court for the trial
of this case. Jury box No. 1 had been decided to be a
valid and legal box, and that part of the objection of the
defendant that referred to the boxes was overruled. The
business of the court required a jury for the trial of a
criminal case; there was no jury in attendance on the
court. It became, therefore, the duty of the court to im-
mediately issue an order and have it spread upon the min-
utes of the court for the drawing of the jury out of box
No. 1, and all other or different modes of procedure were
illegal and void, and due exceptions were taken to the
action of the court in all matters connected with the issu-
ing of these open venires.

A total departure from the provisions of law is good
grounds for challenge to the array. (Thompson on Trials,
Sec. 33; State v. Du Roeba, 20 La. Ann., 356; State v.
Morgan, 20 La. Ann., 442; State v. Jenkins, 32 Kan., 477;
Zazone v. State, 97 Tenn., 101.)

When selection is not made by officer or officers appointed by statute, the challenge to the array will be sustained. (Thompson on Trials, Sec. 33; Elkins v. State, 1 Tex. App., 539; Shackelford v. State, 2 Tex. App., 385; Rapalje Crim. Pro., Sec. 180; Green v. State, 59 Md., 123; Posey v. State, 73 Ala., 490; Dupont v. McAdow, 9 Pac. Rep., 925; State v. Winser, 5 Harr. (Del.), 512; William v. Com., 91 Pa. St., 493; Hall v. Com., 80 Va., 110; Honesty v. Com., 81 Va., 283; Spurgeon v. Com., 86 Va., 652; Kermon v. Gilmer, 2 Pac., 24; Rogers v. State, 33 Md., 543; Lincoln v. Stowell, 73 Ill., 246; Clinton v. Englebrecht, 13 Wall., 434; Brazier v. State, 44 Ala., 387; State v. Yordi, 30 Kan., 221; Jones v. State, 3 Blackf., 37; McCloskey v. People, 5 Park. Crim., 308; 1 Brown (Pa.), 121; Baker v. Steamboat, 14 Ia., 214.)

The court had no right to issue an open venire until the *affirmative methods* prescribed by statute had been *exhausted*. (Clawson v. U. S. Sup. Court Rep. (L. Ed.), Book 29, 180; 17 Ency. L. (2d Ed.), 1111b.) Statutory provisions respecting the constitution of juries must be followed. (State v. Jennings, 15 Rich. L. (S. Car.), 42; State v. Pratt, 15 Rich. L. (S. Car.), 47.)

In modern practice the grounds which will support a challenge to the array or an objection of a similar character usually embrace those recognized at the common law and those specially designated by statute, and it may be stated generally that objections to the array will be sustained for any material departure from the prescribed mode of the selecting, listing or drawing jurors. (12 Ency. of Pl. & Pr., 420; State v. Simons (Kan.), 60 Pac., 1052; Healy v. People, 177 Ill., 306; People v. Stewart, 7 Cal., 141.)

Written declarations not signed or sworn to by the deceased are not admissible in evidence. (State v. Fraunburg, 40 Ia., 555; State v. Elliot, 45 Ia., 486; State v. Wilson, 24 Kan., 189; Beets v. State, 19 Tenn., 617; State v. Sullivan, 51 Ia., 142; Anderson v. State, 79 Ala., 5.)

Dying declarations to be admissible must be confined to the act of killing and must not contain matters or facts anterior to and not immediately connected with the killing. (State v. Draper, 65 Mo., 355; Leiber v. Com., 9 Bush., 11 (Ky.); Mose v. State, 35 Ala., 421; Johnson v. State, 17 Ala., 618; Ben v. State, 37 Ala., 103; State v. Shelton, 2 Jones (N. C.), 360; Nelson v. State, 7 Humph., 542; Hackett v. People, 54 Barb., 370; Underhill Crim. Ev., Sec. 109; State v. Eddon (Wash.), 36 Pac., 139; State v. Johnson, 26 S. Car., 152-53; People v. Fong Ah Sing, 64 Cal., 253; Star v. Com., 97 Ky., 193; North v. People, 139 Ill., 81; State v. Wood, 58 Vt., 560; Merrill v. State, 58 Miss., 65-67; Jones v. State, 91 Ind., 66; West v. State, 7 Tex. App., 150; People v. Knapp, 26 Mich., 112; Pulman v. State, 88 Ala., 1; Johnson v. State, 102 Ala., 1; People v. Omstead, 30 Mich., 431; State v. Center, 35 Vt., 378; 6 Ency. L. (1st Ed.), 123; *Ex parte* Barber, 16 Tex. App., 369; State v. Pengo, 80 Ia., 37; Collins v. Com., 75 Ky., 271; State v. Van Zant, 80 Mo., 67.)

It may be said that the error in admitting the whole statement was cured by the defendant's counsel insisting that all go in, if any. But it will be noticed that the objection of defendant's counsel was full and complete, and that the court overruled the objection and that immediately the whole statement was read to the jury, and that after the cross-examination of the witness by defendant's counsel had begun the court made a remark that the *address* and *jurat* on the statement be not read, and it was to this that defendant's counsel insisted that it all be read to the jury, which was done.

It was the duty of the court, when the objection was made, to strike out and not allow to be read all those portions which were not proper to go to the jury, and the error was committed when the exhibit was admitted and read as a whole.

Instruction No. 15, given on request of the prosecution, is error, as it instructs the jury that the burden of proving

his innocence is on the defendant, when his defense is self-defense.

In this instruction the court says the claim of self-defense presupposes that O'Connor was intentionally killed. That it is plain when one kills another in self-defense, he intends to do it. This is not true. Numerous cases have occurred and can be supposed when a man kills another in defending himself, when he did not intend to kill him, but only to wound him or render him incapable of committing a violent injury upon the defendant.

Although it was formerly held in some jurisdictions that in self-defense the burden of proof was on the defendant to show by a preponderance of the evidence that he acted in self-defense, the late and more reasonable doctrine is that the burden of proof in a criminal case never shifts, not even in self-defense. (McClain on Crim. L., Vol. 1, Sec. 316; Stakes v. People, 53 N. Y., 164; People v. Downs, 123 N. Y., 558; People v. Pallister, 138 N. Y., 601; State v. Porter, 34 Ia., 131; State v. Fowler, 52 Ia., 103; State v. Donahue, 78 Ia., 486; State v. Patterson, 45 Vt., 308; State v. Wingo, 66 Mo., 181; State v. Alexander, 66 Mo., 148; McKenna v. State, 61 Miss., 589; State v. Ellick, 1 Winst., 56; Goodall v. State, 1 Ore., 333; State v. Conahan, 10 Wash., 268; State v. McCluer, 5 Nev., 132; March v. Walker, 48 Tex. App., 372; Richardson v. State, 9 Tex. App., 612; Babb v. State, 8 Tex. App., 173; Ainsworth v. State, 8 Tex. App., 532; Underhill on Crim. Ev., 401; 9 Ency. L. (1st Ed.), 731; State v. Porter, 34 Ia., 131; McKenna v. State, 61 Miss., 589; People v. Powell, 87 Cal., 348; People v. Downs, 56 Hun., 5; 8 N. Y. Supp., 521; Jones v. State, 13 Tex. App., 1; McDaniel v. State, 76 Ala., 1; Watson v. State, 82 Ala., 10; Brown v. State, 83 Ala., 33; Dent v. State, 105 Ala., 14; State v. Hill, 69 Mo., 457; Trumble v. Territory, 3 Wyo., 280.)

The next errors in the charge are contained in instructions given at the request of the State in regard to the credibility of witnesses, which, while perhaps containing

some new language or proposition, contains an allusion to the fact that the defendant, his life and liberty being at stake, may or has a motive for testifying falsely. This is reiterated in each of these instructions and emphasizes to the jury this matter almost as if the court had said, The defendant has a motive to testify falsely and you should, therefore, be very careful how you believe what he says.

Another error, in our judgment, is contained in instruction No. 7, given on behalf of the prosecution, where the court says: "You as-jurors, who have to pass upon questions under your oaths, are not at liberty in drawing conclusions from the evidence in the case to disbelieve as jurors while you believe as men."

We are aware that this instruction has been frequently given, but have always believed it erroneous. Men frequently, if not generally, come to conclusions and beliefs on much less evidence, and from other evidence than will convince beyond a reasonable doubt or would be sufficient to convict in a criminal case, especially a case of homicide. Men do not, under oaths as jurors, convict on evidence that as men outside the jury box would cause them to believe in a person's guilt, and they should not do so. But this instruction would cause them to do so if it were followed.

The next assignment of error to be considered is the testimony of W. A. Hocker as to his recollection of a part of the testimony of Frank Ross at the preliminary examination.

We concede that where a witness has died since giving testimony that his testimony may be proved in a subsequent trial by parol, but the rule is that the witness testifying to what the deceased witness said must state accurately the substance of what was said. (State v. O'Brien, 81 Ia., 88; People v. Murphy, 45 Cal., 137; State v. Hooker, 17 Vt., 658; Brown v. Com., 73 Pa. St., 321; State v. Able, 65 Mo., 357-369-373; Com. v. Goddard, 80 Mass., 402; Jackson v. State, 81 Wis., 127.) But where the statement

of the witness shows he has forgotten the substance of, or omitted a part of what was said, he is incompetent. (Puryear v. State, 63 Ga., 692; Bush v. Com., 80 Ky., 244; Com. v. Richards, 18 Pick. (Mass.), 434-438-439; Thorp v. State, 15 Ala., 749.)

The denial of the motion for a continuance, we believe, was such an abuse of discretion on the part of the court as to amount to error. The defendant had already been tried at the same term of court on the same charge, and it has been a custom in that court to not force a defendant against his will to be tried for his life twice at the same term of court. His chief counsel upon whom he relied was sick and unable to attend, and the defendant, being confined in jail, could not make other arrangements for counsel. The fact that he had gone through a hard and expensive trial but a short time before, should have some weight with the court, and common compassion should have moved the court to grant a mere request for the continuance, even without the good reasons set out in the motion and affidavits.

The court allowed J. H. Ward to stay in the court room, although the rule for the separation of witnesses was enforced, and then allowed him to testify. We are aware that the enforcement of the rule is a matter of discretion of the court, but we hold in a case of this kind it was an abuse of discretion. If the court makes exception as to one person, it can as to all the prosecution witnesses and enforce it as to defendants. No good reason is shown why Ward should be allowed in the room and then allowed to testify, and, taking these matters in connection with the others, it goes to show that the defendant did not have such a fair, impartial trial as the laws of this State guarantee to one accused of crime, and especially murder in the first degree.

*J. A. Van Orsdel,* Attorney General, for the State.

THE METHOD IN WHICH THE JURY WAS SUMMONED.— No challenge to the array was ever legally interposed in

this case. The objection to the action of the District Court in ordering an open venire is not a challenge to the array, and in the absence of a proper challenge cannot be taken advantage of at this time. (1 Thomp. on Trials, Secs. 91, 113; Clark v. Goode, 6 J. J. Marsh (Ky.), 637.)

A challenge to the array should be made before trial. (Thomp. on Trials, Sec. 113; Dovey v. Hobson, 2 Marsh, 154; State v. Stevens, 11 S. Car., 319; Steele v. Maloney, 1 Minn., 347.)

Statutory provisions respecting the drawing of the panel are largely regarded as directory merely. (Thomp. on Trials, Sec. 15.)

THE ADMISSION OF THE DYING DECLARATION.—The test of the admissibility of dying declaration as evidence in cases of homicide is as follows: "The general rule is that matters contained in a dying declaration are not competent unless they would be admissible if they came from the lips of a living witness." (3 Rice on Ev., Sec. 339; Montgomery v. State, 80 Ind., 338; Binns v. State, 46 Ind., 311.)

This rule is based upon the principle that the solemnity of the occasion, in the presence of impending death, takes the place of an oath. This is all the difference between evidence adduced by dying declaration and evidence adduced by witnesses duly sworn in the trial of the case. In one case the condition of the declaration is such as to offer the greatest inducement for telling the truth, in the face of impending death; in the other the oath is administered to accomplish the same end.

Dying declarations can be received only on the trial of an indictment for homicide. (3 Rice on Ev., Sec. 334; People v. Davis, 56 N. Y., 95.)

"Such evidence is received as an exception to the general rule that hearsay evidence is not admissible only upon the principle that protects human life by punishing those who commit homicide. Such crime is often committed when none but the victim and his assailant are present, and his declaration when *in extremis,* conscious that he is about to

die, is received to prevent a failure of justice. (3 Rice on Ev., Sec. 334; Greenleaf on Ev., Secs. 156, 225.)

The court will find that every fact stated in the declaration are facts leading up to and surrounding the transaction at the time the homicide was committed. It states all the facts leading up to the commission of the homicide, the persons present at the time the homicide was committed, the animus, if any, that existed between the deceased and the defendant, and the conversation indulged in by the deceased and the defendant. This statement was written down by Dr. Stafford, and was signed by one Mrs. O'Connor, by C. B. Stafford and W. A. Hocker, and sworn to before the acting coroner, John G. Smith. The mere fact that this statement was written down and signed by those present is immaterial. The witnesses present could have testified to the facts therein contained upon the witness stand. If the statement had been written by the deceased, in order to have made the statement admissible, it would probably have had to have been signed by the deceased, but that is not the case. The admission of this statement was competent evidence, which certainly could not in any way prejudice the defendant, since all the evidence could have been testified to, and probably was testified to by the persons present and who signed the statement.

We would suggest to the court that, owing to the imperfect record here presented, it is impossible for this court to determine anything whatever as to the competency of this testimony. The facts therein stated may be dependent upon other testimony given in the case, such other testimony making these facts admissible. This court will not take a scrap of the testimony given in this case, and, in the absence of the balance of the testimony, say that the District Court erred in the admission of any particular testimony set out in the record. Besides, counsel for defendant waived any right that they may have had to object to this testimony, by requesting the court to allow all of this statement to go in.

The bill of exceptions does not purport to give all of the evidence on the points in controversy. The certificate of the trial judge does not affirmatively state this fact, and it should so appear in the certificate. (Miller v. State, 3 Wyo., 658.)

Exception is taken to instruction No. 15, given at the request of the prosecution, and it is claimed that this instruction casts upon the defendant the burden of proof that he killed the deceased in self-defense. The instruction itself will not bear any such interpretation. We admit the proposition that the burden of proof never shifts to the defendant, and where self-defense is set up as a justification for the commission of a homicide, if the evidence adduced on behalf of the defendant creates a reasonable doubt in the minds of the jury, this is sufficient and the verdict should be not guilty. Hence, we fully agree with the authorities cited by counsel for plaintiff in error in their brief on this point. The instruction, however, does not cast the burden upon the defendant by any reasonable interpretation, especially when taken in connection with instructions 9 and 23, given on behalf of the defendant in the trial of the case. Instruction 9 is as follows:

"The jury are instructed that if from the evidence there is reasonable doubt whether the defendant himself, at the time of the killing, was under reasonable apprehension and honest fear that O'Conner intended and was about to inflict upon him great bodily harm, and the defendant fired and shot under that belief, then the verdict of the jury must be not guilty." Instruction 23 is as follows: "If the jury have a reasonable doubt as to whether the defendant, at the time of the shooting, acted solely through fear of great bodily harm, and under circumstances calculated to excite such fear in a reasonable person, then the jury must find the defendant not guilty."

In the instruction in question the court instructed the jury that, in order to establish self-defense, they must be satisfied that certain conditions existed. It is admitted by

counsel for plaintiff in error that the conditions named by the court fairly expresses the law as to self-defense. Taking the three instructions together, and the jury could draw no other conclusion than that, if a reasonable doubt was created in their minds by the evidence adduced by defendant as to self-defense, they should find the defendant not guilty.

"The defendant in a criminal case is not entitled to demand a new trial or a reversal of a judgment on account of an error in the instructions, where it is clear from the evidence that the verdict is right, and that a new trial would, under correct instructions, produce the same result." (Miller v. State, 3 Wyo., 658.)

Much less will this court reverse this case, even should this instruction standing alone be found to be erroneous, for the reason that, if an error exists in this instruction, it is fully cured by instructions 9 and 23 above cited. (Ross v. State, 8 Wyo., 351.)

The jury were fully and correctly informed of the degree of proof and weight of evidence required in other parts of the charge. This instruction was not directed to that question. It contains no intimation that a mere belief, not amounting to a reasonable doubt, is sufficient upon which to base a finding. But, the court having instructed them that the charge was to be considered as a whole, when they are directed that if they found certain facts, the law exacts a particular verdict, the reasonable construction is that they are to find upon the principles set out in the charge for their guidance in that particular. We do not think the failure of the court to repeat the caution as to reasonable doubt was error, and we cannot presume that it would tend to mislead the jury.

Instructions 11 and 18, to which exception is taken, are in reference to the credibility of witnesses, and express clearly the law on this subject.

Originally instructions to the effect that if the jury found that the witness had testified falsely as to one material fact,

they should disregard all of such witness' testimony, has been modified; and the modern authorities all hold that it is proper for the court to instruct the jury that if a witness has testified falsely as to one material fact, they may discard all of such witness' testimony, except in so far as it has been corroborated by other reputable witnesses. "The jury are not bound to wholly discredit a witness, if his testimony as to material facts is corroborated by other credible and unimpeached witnesses." (3 Rice on Ev., 295; Dunn v. People, 29 N. Y., 523; Deering v. Metcalf, 74 N. Y., 501; People v. Peavey, 38 Hun., 418; Grimes v. State, 63 Ala., 166; Jordan v. State, 81 Ala., 20.)

Instruction No. 7, to which exception is taken, was considered by this court in the case of Ross v. State, 8 Wyo., 351. Though it was not discussed in the opinion of the court, it was properly before the court for consideration, and presented both in the briefs of counsel and by argument, and was one of the objections disposed of by the court in the following language: "There are several objections to the charge based upon the wording, which counsel contend has a tendency to mislead the jury and prejudice the defendant under the facts of the case. We have examined them with a great deal of care and do not think these objections are sustained."

A witness, Ross, had testified at the preliminary examination and died before the trial of the case. The prosecution sought to introduce his testimony, or a portion of it, by placing the witness, Hocker, upon the stand to testify from his recollection of portions of the facts testified to by Ross at the preliminary examination. It is conceded by counsel that where a witness has died since giving testimony his testimony may be proved in a subsequent trial by parol, but it is contended that the witness, so testifying to what the deceased witness said, must state accurately the subsance of what he said. This rule is substantially correct, but it is not necessary that the witness testifying to the facts testified to by the deceased witness shall testify to all

the matters testified to by such witness. His evidence may be only a portion of the testimony, and whatever portion of his testimony is testified to must be substantially the testimony of the deceased witness. (3 Rice on Ev., 357; Horton v. State, 53 Ala., 488; Davis v. State, 17 Ala., 354; Summons v. State, 5 O. S., 325; Marley v. State, 67 Ala., 55.)

DENIAL OF CONTINUANCE.—The circumstances were all before the trial court. There is but one ground under, the statute of Wyoming upon which it is incumbent upon the trial court to grant a motion for continuance, and that is on account of the absence of evidence or material witnesses. (R. S., Sec. 4279.) The motion was not based upon absence of any witness, hence the matter of granting a continuance was entirely in the discretion of the trial court. (R. S., Sec. 4280.)

THE ALLOWING OF THE WITNESS, WARD, TO REMAIN IN THE COURT ROOM.—The separation of witnesses upon the trial of a case is within the discretion of the court, and a party is not entitled to it as a matter of right. (1 Thomp. on Trials, Secs. 252, 276; 1 Greenleaf on Ev., Sec. 432.)

CORN, CHIEF JUSTICE.

The plaintiff in error was tried by a jury and found guilty of murder in the second degree. The bill of exceptions does not contain all the evidence, but it appears that what the defense relied upon was that the defendant shot the deceased in necessary self-defense.

Among the errors assigned is the giving to the jury, over the objection of the defendant, the following instruction upon request of the prosecution:

"Under certain defined circumstances, the laws of God and man give the right to take life in self-defense.

When a person in the lawful pursuit of his business, and without blame, is violently assaulted by one who manifestly and maliciously intends and endeavors to kill him, the person so assaulted without retreating, although it be

in his power to do so without increasing his danger, may kill his assailant to save his own life, or prevent enormous bodily harm.

Homicide is justifiable on the ground of self-defense where the slayer, in the careful and proper use of his faculties, *bona fide believes,* and has reasonable ground to believe that he is in imminent danger of death or great bodily harm, and that his only means of escape from such danger will be by taking the life of his assailant, although in fact he is mistaken as to the existence or imminence of the danger.

The claim of self-defense, implies, presupposes, that O'Connor was intentionally killed. It is plain that when one kills another in self-defense he intends to do it, but it would not be unlawful killing although intentionally done.

Before you can acquit the prisoner on the ground of self-defense you must be satisfied that several facts, which I shall now enumerate and explain, were by the evidence proved.

1. You must be satisfied that O'Connor was the assailant; that he began the assault.

2. You must be satisfied that O'Connor manifestly and maliciously intended and endeavored to kill or do great bodily harm to the defendant. Did O'Connor intend to do that, and in doing it was he actuated by malice? Or was he simply defending himself? Trying to save his own life? These are the questions for your determination under this head.

3. You must be satisfied that the prisoner, in good faith, believed and had reasonable grounds for believing that he was in danger of losing his life or sustaining great bodily harm from the violence of O'Connor. The bare belief, however, was not sufficient; there must have been reasonable grounds for believing that there was such danger, and he must have acted under the influence of such belief alone. In determining whether there were such reasonable grounds for the belief, you are not to conceive of

some ideal reasonable person, but you should, as nearly as possible, put yourself in his position, with his physical and mental equipment, surrounded with the circumstances with which he was surrounded, and exposed to the influences to which he was exposed. Does the evidence show that he had such reasonable grounds for believing that O'Connor was about to take his life, or to do great bodily harm to him, just before and at the time said O'Connor was killed?

4. You must be satisfied that the danger of losing his life or of sustaining great bodily harm at the hands of O'Connor was, at the time, actually or apparently imminent and irremediable. The law regards human life as the most sacred of human interests committed to its protection, and there can be no successful interposition of self-defense unless the necessity for taking O'Connor's life was at least apparently pressing and urgent at the time, unless, in a word, the taking of O'Connor's life was the reasonable resort of the prisoner to save his own life or to avert great bodily harm. It is true that he had a right to act upon appearances, upon such appearances as would induce a reasonable person in his position to believe that there was such immediate danger, and if the appearances turned out to be fallacious he was not to be blamed.

5. You must be satisfied that the killing of O'Connor was the only means of escape from the danger mentioned. If O'Connor's life was taken after the appearance of danger disappeared, the claim of self-defense must not be allowed Although O'Connor may have been the aggressor, although he may have begun the assault, yet if you find that the danger of death or of great bodily harm from O'Connor could have been escaped from, could have been avoided, without taking his life, the prisoner cannot shelter himself behind the laws of self-defense. It is no defense in such case.

6. You must be satisfied that the defendant was without blame, without fault. The law of self-defense does not imply the right of attack, nor does it permit a man to

kill another for revenge. Reason suggests and the law makes a distinction between the case of a person driven to necessity of taking life in self-defense in a conflict provoked and incited by his own wrong, and that of one reduced to such necessity in a conflict that was neither sought or provoked by him. In a case when the party assaulted is in the wrong, he must, before taking the life of his assailant to save his own life or to avoid bodily injury, flee as far as he conveniently can, either by reason of some wall, ditch or other impediment, or as far as the fierceness of the assault will permit, for it may be so fierce as not to allow him to yield a step without manifest danger to his life or great bodily harm, and then, in his defense, he may kill his assailant instantly. But in a case where the assaulted party is not in the wrong, neither provoked nor incited the conflict, and was assaulted while in the pursuit of his lawful business, he may, without retreating a step, kill his assailant, if necessary to protect his own life or to avoid grievous harm. In this case you are instructed that the defendant had a right to be in the saloon, and if while peaceably there the deceased provoked a quarrel and followed it in so violent a manner as to excite the fear of a reasonable man that he was in danger of great bodily harm, and the fear of defendant being thus excited and acting solely from such fear, and believing from appearances that he was in imminent danger of great bodily harm, he shot and killed deceased, the verdict must be not guilty."

We are unable to escape the conclusion that this instruction is fatally erroneous. It not only informs the jury that the burden of proof is upon the defendant to establish his defense, but it imposes a measure of proof which the law does not require of the defendant in any criminal prosecution. The opening statement is that, in order to acquit the defendant upon the ground of self-defense, the jury must be "satisfied" that O'Connor was the assailant, and this requirement is repeated and emphasized as to each step in the proof of the prisoner's defense. To "satisfy" the mind,

we think the evidence must be such as to remove all reasonable doubt. The general definition of the word as given in Webster's dictionary is, "to fill up the measure of a want of (a person or thing);" and, more specifically, "to free from doubt, suspense, or uncertainty; to give assurance to; to set at rest the mind of; to convince." But even if the language employed does not necessarily require proof beyond a reasonable doubt, it is quite evident that it does impose upon the defendant the necessity of establishing his defense by something more than a preponderance of the evidence. So that if it should occur that the jury believed that the defense was supported by the weight of the evidence, but yet they were not satisfied of any of the necessary facts, it would be their duty, under this instruction, to find against the defendant on that issue. This is not the law, and we hardly see how the instruction could have failed to prejudice the defendant's case. As before stated, we have not the complete evidence before us, but it appears there was sufficient to make it proper and necessary in the opinion of the court to instruct the jury on the subject. And, indeed, the record indicates that the sole reliance of the accused was that the killing was in self-defense.

Objection is also urged to the paragraph of the same instruction, which states that "the claim of self-defense implies, presupposes, that O'Connor was intentionally killed. It is plain that when one kills another in self-defense he intends to do it." This statement is not supported by any presumption of law and is not true as a matter of fact. It is perfectly evident that one may kill another in self-defense, yet without any intention or expectation that his assailant shall be killed. A blow with the fist, or any slight weapon, struck in self-defense, may result fatally without any such intention or expectation upon the part of the one who strikes. It is not even true where a deadly weapon, such as a pistol, is used, though, in such a case, the evidence of an intention to kill is, of course, usually much stronger. The statement was clearly erroneous, though, if it was clear

from the evidence that the killing was intentional, it might not be prejudicial to the defense, or reversible error.

It is further objected that a paper alleged to contain the dying declarations of the deceased was improperly admitted in evidence. The statements were written down by one of the physicians in attendance, and the paper was signed and sworn to by him and the other physician and one Mrs. O'Connor. It was not read over to the deceased and was not signed by him. Under such circumstances, the writing is a mere memorandum. It may be used to refresh the memory of the witness, but is not itself evidence of the declarations of the deceased. To make it admissible it must have been read over to the deceased and signed or assented to by him. (Allison v. Com., 99 Pa. St., 33; Anderson v. State, 79 Ala., 6; State v. Elliott, 45 Ia., 486; State v. Wilson, 24 Kan., 189.) If, however, the statements contained in the paper were admissible as dying declarations, when presented to the jury by competent testimony, we are not prepared to say that the admission of the paper itself, though erroneous, was prejudicial to the defendant or reversible error. The two physicians were present as witnesses and testified that the writing contained, substantially, the dying declarations of the deceased. They were competent to testify to the declarations, refreshing their recollection by reference to the writing, and the error is thus rather technical and formal than substantial or material. But the same cannot be said as to a part of the declarations themselves contained in the writing. It contains, among others, the following statements: "Ed O'Connor says that on Monday afternoon, October 24th, that Mr. Foley had no provocation whatever for shooting him; he says that he made no assault upon Mr. Foley whatever;; he said he had a gun early in the evening, but George Beteau had taken it away from him;" and again: "This remark was made one and one-half weeks ago; Mr. Foley says to O'Connor that I don't think you are a gamester; I will give you the first shot; he says that he and Foley

had several quarrels within the last two weeks, particularly within the last half week, but still he did not consider himself and Foley enemies." Dying declarations are obnoxious to the objections which, according to the general rule, exclude hearsay testimony; the witness is not sworn and there is no opportunity for cross-examination. They are hearsay testimony. But, in view of the fact that in many cases there are no eye witnesses to the murder except the slayer and the deceased, they are made an exception to the rule and admitted upon the ground of necessity. But the exception only extends to cases of homicide "where the death of the deceased is the subject of the charge and the circumstances of the death are the subject of the dying declarations." (1 Greenl. Ev., 156.) If they relate to former distinct matters they do not come within the reason of the exception and are not admitted. (State v. Wood, 53 Vt., 564; Nelson v. State, 7 Humph., 542; Mose v. State, 35 Ala., 421; Walker v. State, 52 Ala., 192; Hackett v. People, 54 Barb., 374; Binns v. People, 46 Ind., 313; State v. Draper, 65 Mo., 335; State v. Van Sant, 80 Mo., 77.) In Hackett v. People, *supra,* one of the declarations was that the defendant had often threatened to kill the deceased. It was held to have been erroneously admitted and the judgment was reversed upon that ground.

In this case the dying declarations of deceased that he and defendant had had frequent quarrels, and that defendant had, in effect, challenged him to fight with pistols, some days before the transaction which resulted in the killing, were clearly inadmissible, and, as they strongly tended to show malice and a motive for the killing, we cannot very well see how the error could fail to prejudice the defendant's case.

But it is urged that defendant waived this objection and cannot now insist upon it. The bill of exceptions shows that the defendant not only objected that the paper itself was wholly inadmissible, because not properly authenticated, but also made the specific objection that the previous rela-

tions of the defendant and the deceased could not be. proven by dying declarations. The court ruled that the paper be admitted, but afterwards, when it was about to be read to the jury, directed that the address and the jurat need not be read. But the defendant stated that, if any part was competent, all of it was, and requested that all of it be read' and it was accordingly done. The claim that this statement of defendant's counsel waived the objection to particular declarations contained in the paper, asks of this court a ruling which is quite strict and technical and ought to be strictly and technically considered. In strictness, then, the paper was entirely inadmissible for all purposes without regard to its contents, and the defendant hazarded nothing in insisting that if any part was competent it should all go to the jury. And, as the court had already ruled that all the material parts should go in, if there was a waiver at all by the defendant, it could only apply to the formal and nonessential parts, such as the jurat, etc. But, taking a reasonable view of the matter, we think the objection to that part of the statement which had reference to the previous relations of the parties, upon the ground that dying declarations were not competent evidence of matters of that kind, was fairly presented to the court and that the circumstances do not indicate any purpose on the part of the defendant's counsel to waive their exception.

W. A. Hocker was called by the prosecution to give the testimony, or a part of the testimony, of Frank Ross, a deceased witness, who had testified at a former trial of the case. He was asked if he could give the substance of the testimony of the deceased witness with reference to the shooting. He replied: "It is impossible for me to give the substance of the testimony. There is a part of it I remember, for the reason it was contradictory to the balance of the testimony. I did not tax my memory with it all." He was then asked if he could state what the testimony was in regard to O'Connor raising the chair just prior to the shooting and replied that he could. And, be-

ing asked to state it, said that Ross stated at the time that O'Connor did not raise the chair from the floor and that O'Connor was shot by Foley while the chair was not raised from the floor. This was objected to, and we are of the opinion that the objection should have been sustained.

The rule is that it is sufficient if the witness is able to state the substance of what was sworn on the former trial. But he must state, in substance, the whole of what was said on the particular subject which he is called to prove. (1 Greenl. Ev., 165.)   In this case the witness did not profess to remember, or to be able to state, the substance of what the deceased witness testified to in regard to the circumstances of the shooting, but he singled out an isolated statement to which he said his attention was particularly attracted by the fact that it did not agree with the testimony of other witnesses upon the same subject. The statement, standing alone, would seem to be highly prejudicial to the defense and the defendant was entitled to all that the deceased witness said upon the subject. The witness did not assume or undertake to state it all and he was, therefore, incompetent to testify upon the subject. The evidence did not purport to be the substance of all that the deceased witness testified to upon the subject, but only an isolated fragment, and it should have been excluded from the jury. (Summons v. State, 5 O. S., 325; Wolf v. Wyeth, 11 S. & R., 150; Gildersleeve v. Garaway, 10 Ala., 262; 1 Phil. Ev. (Cowen & Hill's Notes), 389.)

It is not necessary for us to pass upon the alleged errors in the selection of the jury. The subject has been considered by this court in the recent case of State v. Bolln, 70 Pac. R., 1. (10 Wyo., 439.)

The judgment will be reversed and the cause remanded for a new trial.                                     *Reversed.*

KNIGHT, J., and POTTER, J., concur.