623 A.2d 630

**Lamont Lee RICHMOND a/k/a Lambert Lee Bonds**

v.

**STATE of Maryland.**

**No. 138, Sept. Term, 1991.**

Court of Appeals of Maryland.

April 26, 1993.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, Nancy S. Forster, Asst. Public Defender, all on brief), Baltimore, for petitioner/cross respondent.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent/cross petitioner.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

Opinion by McAULIFFE, Judge.

As a result of an altercation with Thomas Winston, the defendant was charged in the Circuit Court for Prince George's County with assault with intent to murder, assault with intent to maim, assault with intent to disable, malicious wounding with intent to disable, assault and battery, and carrying a dangerous weapon openly with the intent to injure. At the conclusion of the State's case, the trial judge granted the defendant's motion for judgment of acquittal on the charges of assault with intent to murder and assault with intent to maim.

At the conclusion of all the evidence, the defendant excepted to the refusal of the court to instruct the jury on the issue of imperfect self-defense, contending that a finding of imperfect self-defense would mitigate the remaining aggravated assault charges to "assault and battery." The jury found the defendant not guilty of the weapons charge and of assault with intent to disable, but guilty of malicious wounding with intent to disable and of battery. The Court of Special Appeals affirmed the judgment of the trial court and we granted certiorari to consider the defendant's contention that the trial court erred in not instructing the jury concerning imperfect self-defense.[1]

The defendant argues that the principles of imperfect self-defense apply to every crime that requires proof of malice without regard to whether a criminal homicide is involved. He points to *State v. Faulkner*, 301 Md. 482, 485–86, 483 A.2d 759 (1984), where we said:

> [T]he difference between murder and manslaughter is the presence or absence of malice.
>
> * * * * * *
>
> [Imperfect self-defense] operates to negate malice, an element the State must prove to establish murder. As a result, the successful invocation of this doctrine does not completely exonerate the defendant, but mitigates murder to voluntary manslaughter.

Thus, the defendant reasons, anything that "negates malice" must mitigate an offense requiring proof of malice to a lesser offense.

The State counters with a two-pronged argument. First, it says, "malice" as an element of the crime of murder differs from "malice" with respect to other crimes, and imperfect self-defense negates only that species of malice

---

1. Defendant's petition for certiorari and the State's conditional cross petition raised additional questions concerning an order for restitution that was imposed as a part of the sentence. Our disposition of this case necessitates resentencing of the defendant, and thus we need not reach those questions.

applicable to murder. Second, the State argues, the concept of mitigation has universally and historically been limited to offenses involving criminal homicide, or the "shadow" or inchoate forms of those offenses.[2] We agree with the State's position, and with each of the interrelated prongs of its argument.

In *State v. Faulkner, supra,* 301 Md. at 486, 483 A.2d 759, this Court explained that the doctrine of imperfect self-defense, like that of hot-blooded response to adequate provocation, does not serve to exonerate a defendant "but mitigates murder to voluntary manslaughter." We went on to hold that:

> Logically, because the statutory offense [assault with intent to murder] is defined in terms of murder, all the defenses available in a murder prosecution are applicable in an assault with intent to murder prosecution.

*Id.* at 504, 483 A.2d 759. Thus, the Court held, the mitigation defense of imperfect self-defense applies to the statutory crime of assault with intent to murder. Recently, we characterized this latter holding as being perhaps "a generous expansion of the law of self-defense...." *Watkins v. State,* 328 Md. 95, 106 n. 3, 613 A.2d 379 (1992).

We also said in *Watkins* that "[t]his Court has never held that imperfect self-defense applies to the offense[ ] ... of ... unlawful shooting with intent to disable...." *Id.* The defendant in the instant case was convicted of unlawful wounding with the intent to disable, a variation of the offense of unlawful shooting with the intent to disable. These two forms of assault with intent to maim, disfigure, or disable arise from a single statute, Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 386. That statute provides as follows:

---

**2.** The State also offers an alternative argument that the evidence did not generate an issue of imperfect self-defense. In order to reach the principal issues, we shall assume, without deciding, the sufficiency of the evidence to generate a question of imperfect self-defense in this case.

If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall unlawfully and maliciously stab, cut or wound any person, or shall assault or beat any person, with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained, every such offender, and every person counselling, aiding or abetting such offender shall be guilty of a felony and, upon conviction are subject to imprisonment for not more than 15 years.

With the exception of a change in the maximum permitted sentence, and certain minor amendments not here relevant, this statute exists today in the form in which it was enacted by Chapter 99 of the Laws of 1853. *See Hammond v. State,* 322 Md. 451, 453, 588 A.2d 345 (1991). The statute sets forth alternative types of assaults and alternative states of mind, as follows:

### Types of Assaults

1. Unlawfully shoot at any person.
2. Unlawfully, and maliciously attempt to discharge any kind of loaded arms at any person.
3. Unlawfully and maliciously stab, cut or wound any person.
4. Assault or beat any person.[3]

### States of Mind

A. With intent to maim, disfigure or disable such person.

---

**3.** As originally enacted, this alternative element read: assault *and* beat any person. The 1888 Code (Art. 27, § 189) contains the original language, but in the 1904 Code (Art. 27, § 294) the language appears as "assault *or* beat any person." We are unable to find any act of the legislature passed during that period authorizing the change. In any event, the disjunctive "or" received official sanction by ch. 628 of the Laws of 1966.

 B. With intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained.

There seems never to have been any doubt that the fourth type of assault, "assault or beat any person," had to be combined with one of the two alternative states of mind (A or B) to constitute an offense under the statute. Early on, however, a question arose as to whether the first three types of assault listed in the statute were self-standing offenses not requiring proof of any specific intent.

■ In *State v. Elborn*, 27 Md. 483 (1867), the defendant was indicted in one count under the statute for an assault "by unlawfully shooting at a certain John W. Downes" (type of assault # 1) and in a separate count, for assault "by attempting maliciously and unlawfully to discharge a loaded pistol at Downes" (type of assault # 2), without any allegation that the defendant harbored specific intent A or B. The trial judge sustained the defendant's demurrer to the two counts, and the case reached this Court on a Writ of Error. Our predecessors sustained the granting of the demurrer, holding that

> the two counts in this indictment are defective in not averring in the language of the Act, that the shooting was done with intent to maim, disfigure or disable Downes....

*Id.* at 489–90. Accordingly, it is clear that a crime charged under § 386 is a specific intent crime, and although a number of alternative elements are available, one of the alternative states of mind must be alleged together with one of the alternative types of assault in order to allege a crime.

■ Even if the defendant's argument concerning crimes involving malice would have some validity if the crime charged in this case were "unlawfully and maliciously wounding" the victim, it is clear that this is not the offense proscribed by the statute. The crime here involved is "unlawfully and maliciously wounding with intent to dis-

able." The grand jury charged that the defendant "did unlawfully, feloniously and maliciously wound Thomas Monroe Winston, with the intent to disable said Thomas Monroe Winston...." This offense is virtually identical, for the purposes with which we are here concerned, with the offense of "unlawful shooting with intent to disable," which this Court held in *Watkins* was not an offense to which the defense of imperfect self-defense would apply. *Watkins*, 328 Md. at 106, 613 A.2d 379. The addition of the word "malicious" has little, if any, significance in the description of these specific intent crimes.

Moreover, imperfect self-defense would not apply even if the offense charged were "unlawful and malicious shooting," and the concept of malice was conceivably of greater importance. Malice, as this Court has pointed out, is a chameleonic term, taking on different meanings according to the context in which it is used. In the context of murder cases, this Court has said that malice means the presence of the required malevolent state of mind coupled with the absence of legally adequate justification, excuse, or circumstances of mitigation. *Ross v. State*, 308 Md. 337, 340 n. 1, 519 A.2d 735 (1987). When correctly defined in criminal cases not involving murder, malice does not involve proof of the absence of mitigation. Simply put, mitigation that will reduce one offense to another is a concept peculiar to criminal homicide cases.

This concept of mitigation, *i.e.*, the presence of circumstances sufficient to mitigate murder to manslaughter, developed in England at a time when murder was not divided into degrees and all murder was punishable by death. Recognizing that not all murders were equal in culpability, and that under some circumstances justice required that the perpetrator suffer a lesser stigma and sanction, the concept of mitigation was developed and the catchall of manslaughter was used as an appropriate repository for mitigated offenses.

Why is it that there exists such a crime as voluntary manslaughter to aid one who kills when provoked into a

passion, yet there is no crime like, say, voluntary theft or voluntary mayhem to aid others who, reasonably provoked into a passion, steal from or maim their tormentors? The answer is historical. With most crimes other than murder the English court came to have discretion as to the punishment and so could take extenuating circumstances into account in the sentencing process; but with murder the penalty remained fixed at death, without the possibility of making any allowance for the extenuating fact that the victim provoked the defendant into a reasonable passion. 'The rule of law that provocation may, within narrow bounds, reduce murder to manslaughter, represents an attempt by the courts to reconcile the preservation of the fixed penalty for murder with a limited concession to natural human weakness.'

LaFave & Scott, *Handbook on Criminal Law* § 76, at 582 (1972) (footnotes omitted).

Perhaps the best known of the mitigators is the hot-blooded response to adequate provocation. Although widely accepted as a mitigating circumstance in murder cases, this concept of mitigation has not ordinarily been used to reduce the grade or degree of any crime other than murder. In *Sensobaugh v. State,* 92 Tex.Crim. 417, 244 S.W. 379 (1922), where a husband caught his wife in the act of adultery and cut off her paramour's sex organ with a razor, it was pointed out that although the doctrine of hot-blooded response to adequate provocation would have mitigated murder to manslaughter had the paramour died, the same provocation would not serve to reduce the crime of mayhem. *See also* LaFave & Scott, *supra,* at 617 (stating that "one who is 'reasonably provoked' into a rage to maim by the victim's conduct cannot use the provocation as a defense").

■ The defendant is in error in assuming that absence of mitigation is always an element of malice. The absence of mitigation is an element of malice only when the offense is one to which mitigation may apply to reduce the offense, *i.e.,* offenses involving murder.

 With respect to other offenses requiring proof of malice, imperfect self-defense does not negate malice because the definition of malice in those cases does not include the concept of absence of mitigation. We agree, therefore, with the conclusion reached by the Court of Special Appeals in *Bryant v. State*, 83 Md.App. 237, 244, 574 A.2d 29 (1990), that

> imperfect self-defense as a mitigating factor (as, indeed, the very phenomenon of mitigation generally) is limited to criminal homicide and its shadow forms, such as ... attempted murder....

The defendant cites *People v. McKelvy*, 194 Cal.App.3d 694, 239 Cal.Rptr. 782 (1987), as authority for the proposition that imperfect self-defense will mitigate a non-homicide offense to a lesser offense. In *McKelvy*, the court stated that a genuinely held belief in the need for self-defense may constitute a defense to the crime of mayhem. *Id.*, 239 Cal.Rptr. at 786. The California intermediate appellate court quoted extensively from *People v. Flannel*, 25 Cal.3d 668, 160 Cal.Rptr. 84, 603 P.2d 1 (1980), a decision of the California Supreme Court establishing imperfect self-defense as a mitigating factor in murder cases. The *McKelvy* court spoke in terms of the defendant's honestly held belief "negating malice" and mitigating the offense. The *McKelvy* decision, however, may be explained on the basis of the special definition the court gave to the term "malice" and to the hornbook proposition that proof of presence of the state of mind inconsistent with a specific intent required for the charged offense constitutes a defense to that offense. *See People v. Goins*, 228 Cal.App.3d 511, 279 Cal.Rptr. 42, 45 (1991).

In California, the instruction on mayhem informs the jury that "acting 'maliciously' means acting 'with an unlawful intent to vex, annoy, or injure another person.' " *McKelvy*, 239 Cal.Rptr. at 785 n. 3. Thus, the *McKelvy* court concluded:

> Although the 'malice' required for the offense of mayhem differs from the 'malice aforethought' with which

*Flannel* was concerned, it is equally true in both cases that the *requisite state of mind* is inconsistent with a genuine belief in the need for self defense. One who truly believes there is a need for self defense cannot be said to act with intent to 'vex, injure or annoy' and may be found guilty of no more than an assault or battery. *Id.,* 239 Cal.Rptr. at 786 (emphasis added). More recently, the Supreme Court of California held that an honest but unreasonable belief that one is acting under duress is not a defense to the crime of robbery, because the defendant's belief did not negate the requisite specific intent, *i.e.,* the intent to deprive the owner of the property. *People v. Bacigalupo,* 1 Cal.4th 103, 2 Cal.Rptr.2d 335, 345–46, 820 P.2d 559, 569–70 (1991).

■ The defense of absence of the requisite specific intent to commit a crime should not be confused with the principle of mitigation. A defendant may intend the exact result he brings about, but be entitled to mitigation because of the circumstances that caused him to act. On the other hand, a defendant not entitled to mitigation may present as a defense evidence of an honestly held though objectively unreasonable belief that is inconsistent with the specific intent required to convict.

■ Certainly, if the jury in the case before us found that the defendant held a subjectively honest, albeit unreasonable, belief inconsistent with the intent to disable, that would furnish a complete defense to this specific intent crime. That fact has nothing to do, however, with the mitigator of imperfect self-defense, which has no application here. The defendant's state of mind may be relevant and potentially decisive when it undercuts the essential element of specific intent that the State must prove beyond a reasonable doubt. No separate instruction is needed for this defense. Instructions dealing with the essential elements that must be proven by the State and the standard of proof applicable in a criminal case fully cover the point. An instruction on imperfect self-defense under these circum-

stances would not only be unnecessary, it would be inappropriate and confusing.

For entirely different reasons, however, we conclude that the conviction of malicious wounding with intent to disable must be reversed, and further, that the defendant cannot be retried for that offense. Three of the charges submitted to the jury were: assault with intent to disable; malicious wounding with intent to disable; and battery. The jury found the defendant not guilty of assault with intent to disable, but guilty of the other two charges. The explanation for the apparent inconsistency in the finding of not guilty of assault with intent to disable but guilty of malicious wounding with intent to disable is found in the instructions given by the trial judge.

In defining the crime of assault with intent to disable and its constituent elements, the judge explained the burden of the State to prove beyond a reasonable doubt the existence of an assault and the existence of a specific intent to disable. When defining the crime of malicious wounding with intent to disable, however, the judge incorrectly told the jury that only the wounding and malice need be shown; he did not explain that the State was required to prove a specific intent to disable. No exception was taken to the instruction and the defendant did not raise the issue here or in the Court of Special Appeals.

An appellate court ordinarily will not decide any issue not raised in and decided by the trial court, and this Court ordinarily will not consider an issue not included in the petition for certiorari. Maryland Rule 8–131(a) and (b). This Court has held, however, that the word "ordinarily" in the Rule does grant an appellate court discretion, under some circumstances, to consider and decide questions not raised in the trial court. *Atlantic Mutual v. Kenney*, 323 Md. 116, 122, 591 A.2d 507 (1991); *Crown Oil v. Glen*, 320 Md. 546, 561, 578 A.2d 1184 (1990); *Taub v. State*, 296 Md. 439, 441–42, 463 A.2d 819 (1983). Additionally, Maryland Rule 4–325(e), which requires a timely objection to an in-

struction in order to preserve the issue for appellate review, provides that "[a]n appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object." The question of whether we should exercise our discretion to take cognizance of plain error in this case is a close one, which we resolve in favor of the defendant.

Plain error is "error which vitally affects a defendant's right to a fair and impartial trial." *State v. Daughton*, 321 Md. 206, 211, 582 A.2d 521 (1990). We have limited the instances in which an appellate court should take cognizance of unobjected to error to those which are "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *State v. Hutchinson*, 287 Md. 198, 203, 411 A.2d 1035 (1980). *See also Rubin v. State*, 325 Md. 552, 588, 602 A.2d 677 (1992); *Calhoun v. State*, 297 Md. 563, 594, 468 A.2d 45 (1983), *cert. denied*, 467 U.S. 1268, 104 S.Ct. 3564, 82 L.Ed.2d 865 (1984). We will "intervene in those circumstances only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial." *Trimble v. State*, 300 Md. 387, 397, 478 A.2d 1143 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). In each case, we will "review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention." *Hutchinson, supra*, 287 Md. at 203, 411 A.2d 1035.

The materiality of the error in this case is uniquely apparent. It is clear from the record that the jury found that the defendant assaulted the victim. It is equally clear that the jury found that the State had not proven the defendant harbored an intent to disable the victim. Correctly instructed concerning the offense of assault with intent to disable, the jury found the defendant not guilty of that offense, even though convinced an assault had occurred.

The record offers no possible explanation for the not guilty verdict other than the jury's conclusion that the requisite specific intent had not been proven. The conviction of malicious wounding is explained by the erroneous instruction, which omitted any requirement of proof of intent to disable.

This is not a case, therefore, in which we must speculate as to the effect of an erroneous instruction; rather, here we can say with reasonable certainty that the error in the instruction resulted in a guilty verdict that otherwise would not have been rendered. That type of error "vitally affects a defendant's right to a fair trial," and is therefore plain error of which we will take cognizance.

 The doctrine of collateral estoppel prohibits retrial of the defendant on the charge of malicious wounding with intent to disable.

> The collateral estoppel form of double jeopardy is not based on two offenses being the same, but on two criminal charges having a common necessary factual component. If the common necessary factual issue is found in favor of the defendant in the first trial, the State may not relitigate the same factual issue in the second trial. If the fact is a necessary element in two offenses, a finding in favor of the defendant in the first trial on the issue requires an acquittal in the second trial.

*Apostoledes v. State,* 323 Md. 456, 463–64, 593 A.2d 1117 (1991) (citations omitted). *See also Ferrell v. State,* 318 Md. 235, 241–45, 567 A.2d 937, *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990); *Powers v. State,* 285 Md. 269, 288, 401 A.2d 1031, *cert. denied,* 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979). The jury's finding that the defendant did not harbor a specific intent to disable precludes a subsequent prosecution for malicious wounding with the intent to disable. The defendant's conviction of battery, however, remains valid. He was not sentenced on that count because the trial judge determined the charge

merged with the crime of malicious wounding. The defendant may now be sentenced on the battery count.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF CONVICTION OF MALICIOUS WOUNDING WITH INTENT TO DISABLE AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR SENTENCING ON THE CONVICTION OF BATTERY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.

Dissenting opinion by ROBERT M. BELL, J.

ROBERT M. BELL, Judge, dissenting.

In *State v. Faulkner*, 301 Md. 482, 483 A.2d 759 (1984), characterizing it as a "mitigation defense," *see Sims v. State*, 319 Md. 540, 554, 573 A.2d 1317, 1323 (1990); *Dykes v. State*, 319 Md. 206, 216, 571 A.2d 1251, 1257 (1990), we recognized imperfect self-defense, 301 Md. at 484, 499–501, 483 A.2d at 760, 768–69, and applied it in a prosecution for the statutory offense of assault with intent to murder. *Id.* at 504–505, 483 A.2d at 771. We explained the latter holding: because the statute used the term "murder" in describing the crime, *id.* at 504, 483 A.2d at 771, but did not define or limit that term in any way, "[t]he 'natural and ordinary signification' ... is that the General Assembly intended to incorporate the common law of murder into this particular statute." *Id.* at 504, 483 A.2d at 771, quoting *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984). The *Faulkner* Court found that, "because the statutory offense is defined in terms of murder, all the defenses available in a murder prosecution are applicable in an assault with intent to murder prosecution." *Id.* at 504, 483 A.2d at 771. On the other hand, we noted:

For murder, mitigation defenses reduce the offense to manslaughter. By contrast, for assault with intent to murder, a mitigation defense reduces the crime to, at most, simple assault. The rationale behind this result is that Maryland does not recognize the offense of assault with intent to manslaughter.

*Id.* at 504, 483 A.2d at 771.

## I.

Before holding that imperfect self-defense is a recognized defense, we undertook a detailed investigation of the historical antecedents of the doctrine and surveyed its acceptance in our sister states. We also considered the nature of the defense itself.

The commonly recognized defenses which mitigate murder to manslaughter typically involve passion-creating circumstances.[1] *Faulkner,* 301 Md. at 486, 483 A.2d at 761. *See also Girouard v. State,* 321 Md. 532, 538, 583 A.2d 718, 721 (1991). They include a mutual affray,[2] being assaulted and battered, discovering one's spouse in the act of sexual intercourse with another, *see Faulkner,* 301 Md. at 486, 483 A.2d at 761; *Glenn v. State,* 68 Md.App. 379, 403, 511 A.2d 1110, 1123, *cert. denied,* 307 Md. 599, 516 A.2d 569 (1986), being subjected to an illegal arrest, *Girouard,* 321 Md. at 538, 583 A.2d at 721; *Glenn,* 68 Md.App. at 403–404, 511 A.2d at 1123, witnessing, or being aware of, an act causing

---

**1.** For the rule of provocation to apply:
 1. There must have been adequate provocation;
 2. The killing must have been in the heat of passion;
 3. It must have been a sudden heat of passion—that is the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool;
 4. There must have been a causal connection between the provocation, the passion, and the fatal act.

*Girouard,* 321 Md. at 539, 583 A.2d at 721; *Sims v. State,* 319 Md. 540, 551, 573 A.2d 1317, 1322 (1990); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law,* 84–85 (3rd ed. 1982).

**2.** A mutual affray occurs "when persons enter into angry and unlawful combat with a mutual intent to fight...." *Sims,* 319 Md. at 552, 573 A.2d at 1322.

injury to a relative or a third party, *Girouard,* 321 Md. at 538, 583 Md. at 721, and anything the natural tendency of which is to produce passion in ordinary men and women. 1 Ronald A. Anderson, *Wharton's Criminal Law and Procedure* § 276 (1957). Words alone, even those characterized as fighting words, Rollin M. Perkins, *Perkins on Criminal Law* 56 (2nd ed. 1969), whether taunting, *Girouard,* 321 Md. at 539–542, 583 A.2d at 722–23, or racially derogatory, *Sims,* 319 Md. at 552, 573 A.2d at 1323, in themselves, are insufficient.

The historical investigation revealed several formulations of imperfect self-defense and, consequently, several standards by which to assess its viability in a given case. 301 Md. at 488–99, 483 A.2d at 762–68. We settled upon the "honest but unreasonable belief standard ... [as] the proper one to be followed in Maryland." 301 Md. at 499–500, 483 A.2d at 768. But, we noted, provocation defenses differ from imperfect self-defense; they do not fall under its umbrella,[3] 301 Md. at 486, 483 A.2d at 761. *See People v. Flannel,* 25 Cal.3d 668, 677, 603 P.2d 1, 8, 160 Cal.Rptr. 84, 88 (1979); Roy Moreland, *The Law of Homicide* 91 (1952); Perkins, *supra,* 1013–14; Laurie J. Taylor, Comment, *Provoked Reason in Men and Women: Heat-of-Passion Manslaughter and Imperfect Self–Defense,* 33 U.C.L.A.L.Rev. 1679 (1986), although, like imperfect self-defense, they "negate malice." *Girouard,* 321 Md. at 538, 583 A.2d at 721; *Faulkner,* 301 Md. at 486, 483 A.2d at 761–62.

## II.

The determination whether imperfect self-defense has applicability outside murder, or its inchoate forms, requires

---

**3.** While purporting to recognize the distinction between provocation defenses and imperfect self-defense, the majority's discussion is almost exclusively in the context of the former. The quotation from Wayne R. LaFave and Austin W. Scott, Jr. *Handbook on Criminal* § 76, at 582 (1972) is addressed to those defenses, not imperfect self-defense. *Sensobaugh v. State,* 92 Tex.Crim. 417, 244 S.W. 379 (1922) was decided under a statute, the policy behind which is quite similar to that underlying provocation defenses.

an analysis of what the *Faulkner* Court meant when it said that imperfect self-defense "operates to negate malice." That, in turn, may implicate and, thus, necessitate another look at, what is the essential nature of imperfect self-defense.[4] I have concluded that imperfect self-defense in reality is not a "mitigation" defense; if the offense requires proof of malice, the negation of malice completely exonerates the defendant.

We began our analysis in *Faulkner*, quite logically, with self-defense, the elements of which are well-settled in Maryland:

(1) The accused must have had reasonable grounds to believe himself in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant;

(2) The accused must have in fact believed himself in this danger;

(3) The accused claiming the right of self-defense must not have been the aggressor or provoked the conflict; and

(4) The force used must not have been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded.

301 Md. at 485–86, 483 A.2d at 764. By way of contrast, we noted:

Perfect self-defense requires not only that the killer objectively believed that his actions were necessary for his safety but, objectively, that a reasonable man would so consider them. Imperfect self-defense, however, requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so.

---

**4.** The majority utterly fails to conduct an analysis of the issue in this context. It never considers how self-defense and imperfect self-defense interface, *i.e.* the relevance of the fact that self-defense and imperfect self-defense are shadow images.

301 Md. at 500, 483 Md. at 768–69, quoting *Faulkner v. State*, 54 Md.App. 113, 115, 458 A.2d 81, 82 (1983). Moreover, we said, successful invocation of imperfect self-defense does not completely exonerate the defendant:

> Its chief characteristic is that it operates to negate malice, an element the State must prove to establish murder. As a result, the successful invocation of this doctrine does not completely exonerate the defendant, but mitigates murder to voluntary manslaughter.

301 Md. at 486, 483 A.2d at 761.

In Maryland, conviction of murder requires proof of malice. The malice element of murder consists of three distinct components: (1) the intent to kill; (2) the absence of justification or excuse; and (3) the absence of mitigation. *Ross v. State*, 308 Md. 337, 340, 519 A.2d 735, 736 (1987); *Glenn*, 68 Md.App. at 401, 511 A.2d at 1124. *See Gladden v. State*, 273 Md. 383, 388, 330 A.2d 176, 179 (1974); *Chisley v. State*, 202 Md. 87, 105, 95 A.2d 577, 585 (1953). *See also* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 857 (3rd ed. 1982).

Malice has been defined differently in other contexts.[5]

---

**5.** That malice has been defined differently in the homicide cases than in non-homicide ones may be explained by the fact that the rule of provocation has application primarily in the homicide context. *See* Perkins & Boyce, *supra* at 857 ("The element of provocation has played such a minor role in some of the non-homicidal offenses that in speaking of them the most common definition of malice is that it means 'a wrongful act done intentionally without just cause of excuse.'") (footnote omitted); Wayne R. LaFave and Austin W. Scott, Jr. *Handbook on Criminal Law* § 76 (1972), quoting *Report of the Royal Commission on Capital Punishment* 52–53 (1953) (provocation is unique to homicide law because, historically, when dealing with crimes other than murder, the English courts could consider extenuating circumstances in the sentencing process, while the penalty for murder remained fixed at death, whatever the circumstances surrounding the murder. Thus, "[t]he rule of law that provocation may ... reduce murder to manslaughter, represents an attempt by the courts to reconcile the preservation of the fixed penalty for murder with a limited concession to natural human weakness."); *Glenn v. State*, 68 Md.App. 379, 401, 511 A.2d 1110, 1112, *cert. denied*, 307 Md. 599, 516 A.2d 569 (1986) (provocation may be unique to murder because, historically, it distinguished those cold-blooded killings "on a

We defined the "malice element" of malicious burning,[6] as an "intention or desire to harm another ... through doing something unlawful or otherwise unjustified." *Brown v. State*, 285 Md. 469, 474, 403 A.2d 788, 792 (1979). In *Rosenberg v. State*, 164 Md. 473, 476, 165 A. 306, 307 (1933), interpreting Article 27, § 111, proscribing "wilfully" and "maliciously" destroying the property of another, the Court said: "wilfully ... is used to characterize an act done with deliberate intention for which there is no reasonable excuse ... and the word 'maliciously' is descriptive of a wrongful act committed deliberately and without legal justification."

---

lonely forest trail or a darkened ... alley from ... the impulsive killing in a village brawl...."). *But see e.g. Thomas v. State*, 30 Ark. 433, 435 (1875) (malicious mischief not committed when the act was done under provocation); *Brown v. United States*, 584 A.2d 537, 539 (D.C.App.1990) (provocation is a proper defense to a charge of malicious destruction of property); *Mosley v. State*, 28 Ga. 190, 192 (1859) (injuries inflicted upon personal property in a passion, or under reasonable provocation, stand on different footing); *State v. Martin*, 141 N.C. 832, 53 S.E. 874, 876 (1906) (malicious mischief is not committed when such act is prompted or done under the influence of sudden aroused passion). In each of these cases, all but one of which are quite old, provocation or aroused passion completely exonerated the defendant, a result quite different from its usual effect. 2 Charles E. Torcia, *Wharton's Criminal Law*, § 153 (14th ed. 1979).

It is the mitigation portion of the definition of malice to which the rule of provocation is directly addressed. One who acts in hot blood in response to a legally adequate provocation does not purport to act with justification or excuse; rather, the law, in its wisdom, provides mitigation—overlooks to a limited extent the human tendency to act irrationally when confronted with some emotionally stressful or painful situations. *See Sensobaugh*, 244 S.W. 379. (Statute made it justifiable homicide when committed by husband against man caught in act of adultery with the actor's wife).

6. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 7 provides:

Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any barn, stable, garage or other building or pier, wharf, boathouse, or any facility attached to a pier or wharf, whether the property of himself or of another, not a parcel of a dwelling house; or any shop, storehouse, warehouse, factory, mill or other building, whether the property of himself or of another; or any church, meeting house, courthouse, workhouse, school, jail or other public building or any public bridge; shall be guilty of a felony and upon

(citation omitted). *But see Brown v. United States*, 584 A.2d 537, 539 (D.C.App.1990) (the malice required as an element of the charge of malicious destruction of property is the same as the malice required to make out a case of murder). Moreover, the California Court of Appeal has determined that there is a "close similarity in the concepts of 'malice aforethought' for purposes of defining murder and 'malice' for purposes of defining mayhem...." *People v. Salazar*, 180 Cal.App.3d 363, 225 Cal.Rptr. 409, 415–16 (1986). *See also* Perkins & Boyce, *supra* at 240, which the *Salazar* court quoted with approval,

> "unlawfully and maliciously [as used in the mayhem statute] ... will require a state of mind corresponding to that needed for commonlaw murder, and will include either an intent to maim or disfigure or an unlawful act done under such circumstances that there is a plain and strong likelihood of such a result (even if not actually intended)." (Footnote omitted).

*See also Shell v. State*, 307 Md. 46, 65–68, 512 A.2d 358, 368–69 (1986) and *Gibson v. State*, 238 Md. 414, 417, 209 A.2d 242, 243 (1965). Perkins & Boyce describe malice as a legal concept made up of two components, one importing the intent to cause the particular harm charged and the other requiring the absence of circumstances of justification, excuse or recognized mitigation. *Id.* at 860.

In *Owens–Illinois v. Zenobia*, 325 Md. 420, 454, 601 A.2d 633, 649–50 (1992), we held that "[i]n a non-intentional tort action, the trier of facts may not award punitive damages [for which proof of malice is a prerequisite] unless the plaintiff has established that the defendant's conduct was characterized by 'evil motive,' 'intent to injure', 'ill-will', or 'fraud.' " (footnote omitted). Discussing the tort of malicious or wrongful interference with economic relationship, this Court, in *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69–72, 485 A.2d 663, 674–76 (1984), recognized that, in

---

conviction thereof, be sentenced to the penitentiary for not more than twenty (20) years.

some contexts, our cases have defined malice, traditionally, as "ill-will or spite," *id.* at 71, 485 A.2d at 675, citing *Willner v. Silverman,* 109 Md. 341, 354, 71 A. 962, 964 (1909) and, in others, as "a wrongful act done intentionally without just cause or excuse," *id.,* citing *McCarter v. Baltimore Chamber of Commerce,* 126 Md. 131, 136, 94 A. 541, 542 (1915); or as an unlawful act. *Id.,* citing *Goldman v. Harford Road Building Assn.,* 150 Md. 677, 682, 133 A. 843, 845 (1926); *Klingel's Pharmacy v. Sharp & Dohme,* 104 Md. 218, 223, 64 A. 1029, 1031 (1906).

In whatever sense or context it is used, "malice" refers to the actor's state of mind, which, depending upon the offense, is related to, but different from, *see Shell,* 307 Md. at 68, 512 A.2d at 369, or encompasses, *see Ross,* 308 Md. at 340, 519 A.2d at 736, the intent with which he or she committed the act in question. Stated differently, "malice is a matter of mind, however convenient it may be to speak in terms of the absence of circumstances of justification, excuse or mitigation. It is a psychical fact which represents the particular kind of *mens rea* or mind at fault required for guilt of certain offenses." Perkins & Boyce, *supra* at 860. So:

> An intent to kill, to give a very limited illustration, may be the same intent in a certain sense, whether it is (a) for self-preservation, (b) formed in a sudden rage engendered by great provocation, or (c) part of a well-laid plan for financial gain; but the psychical fact in its totality is not the same in any two of these. Furthermore the appraisal or evaluation of appearances is also a psychical fact. Hence an intent to kill for the purpose of self-defense under circumstances in which there is reasonable ground for believing this drastic step to be necessary, is psychically different from an intent to kill in self-defense when there is nothing to warrant such a belief.

*Id.*

To prosecute a defendant successfully, the prosecution must prove all of the elements of the charged crime, including any required special mental element, Perkins & Boyce,

*supra* at 1046, such as malice. When the trier of fact accepts evidence that the defendant acted under a mistake of fact as to an element "required for guilt," and "even if it is offered without the support of reasonable grounds [,the mistake of fact] negatives the existence of [the element as to which there has been a mistake of fact and] also disproves the charge itself." *Id.*

The intent of the defendant at the time of the homicide is material to the issue of malice. *Davis v. State,* 204 Md. 44, 52, 102 A.2d 816, 820 (1954); *Wilson v. State,* 4 Md.App. 192, 203, 242 A.2d 194, 201, *cert. denied,* 251 Md. 753 (1968), *cert. denied,* 394 U.S. 975, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969). Malice is not proven solely by reference to intent to cause the particular harm charged, however. When the charged offense is not murder, malice and the intent to commit the offense, though certainly closely related, are different. *Shell,* 307 Md. at 65–68, 512 A.2d at 368–69. Even in the murder context, proof of intent alone is not enough. *Cox v. State,* 311 Md. 326, 333, 534 A.2d 1333, 1336 (1988), quoting *State v. Harper,* 205 La. 228, 17 So.2d 260, 260–61 (1944) (quoting Clark and Marshall, *Works on Crimes* § 255 (4th ed.) (" 'It is manslaughter, and not murder, because there is no malice aforethought, not because of any absence or presence of intention to kill.' "). Whether the charge is murder or another offense requiring proof of malice, an intent short of the actual intent to commit the offense charged, under some circumstances, may supply the necessary malice. *See Ross v. State,* 308 Md. 337, 340, 519 A.2d 735, 736 (1987) (In addition to the intent to kill, an intent: to do grievous bodily harm, (2) to do an act under circumstances manifesting extreme indifference to the value of human life (depraved heart), or (3) to commit a dangerous felony will support a conviction for murder). Moreover, use of deadly force in self-defense is not the equivalent of a conscious decision to employ deadly force. *Ferrell v. State,* 304 Md. 679, 686, 500 A.2d 1050, 1054 (1985), citing *Foley v. State,* 11 Wyo. 464, 72 P. 627, 629 (1903).

*Shell* is illustrative. There, the issue was whether "wilfully and maliciously" destroying the property of another, the offense proscribed by Article 27, § 111, "should be characterized as a specific intent offense [as to which, e]vidence of voluntary intoxication is ... relevant in deciding whether the requisite mens rea is present." 307 Md. at 68, 512 A.2d at 369. After reviewing our precedents, notably *Brown, Gibson* and *Rosenberg,* and those from the Court of Special Appeals, *e.g. Duncan v. State,* 5 Md.App. 440, 248 A.2d 176 (1968) and *Spears v. State,* 38 Md.App. 700, 382 A.2d 616 (1978), we concluded that it should. 307 Md. at 68, 512 A.2d at 369. We also noted that "the offense ... required both a deliberate intention to injure the property of another and malice." *Id.*

### III.

Analytically, self-defense has two aspects. One involves consideration of what the defendant believes and, in particular, the honesty, or sincerity, of that belief. The other focuses on its reasonableness. Both must be assessed in light of existing circumstances.

Imperfect self-defense is a shadow form of self-defense. *Cunningham v. State,* 58 Md.App. 249, 254, 473 A.2d 40, 43, *cert. denied,* 300 Md. 316, 477 A.2d 1195 (1984). It is distinguished from self-defense by whether the honestly held belief common to both is reasonable or unreasonable. A defendant who acts in imperfect self-defense has appraised the situation facing him or her in a faulty fashion while one who acts in self-defense has done so reasonably. Since both the subjective honestly-held belief and "the evaluation of appearances" are "matter[s] of mind," Perkins & Boyce, *supra* at 860, the critical inquiry is which of them, if either, negates malice. *Faulkner* and *Flannel* make clear that it is the former.

In *Faulkner,* we adopted the Court of Special Appeals' articulation of the essential elements of imperfect self-defense, as contrasted with those for self-defense:

Perfect self-defense requires not only that the killer *subjectively believed* that his actions were necessary for his safety but, objectively, that a reasonable man would so consider them. Imperfect self-defense, however, requires no more than a *subjective honest belief* on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so. If established, the killer remains culpable and his actions are excused only to the extent that mitigation is invoked.

301 Md. at 500, 483 A.2d 759, quoting, *Faulkner v. State*, 54 Md.App. 113, 115, 458 A.2d 81, 82 (1983) (emphasis supplied). *See Dykes*, 319 Md. 206, 213, 571 A.2d 1251, 1255 (1990). We went on to observe that "[l]ogically, a defendant who commits a homicide while *honestly, though unreasonably, believing* that he is threatened with death or serious bodily harm, does not act with malice." 301 Md. at 500, 483 A.2d at 769 (emphasis added). Indeed, we said "when evidence is presented showing the defendant's *subjective belief* that the use of force was necessary to prevent imminent death or serious bodily harm, the defendant is entitled to a proper instruction on imperfect self-defense." 301 Md. at 500, 483 A.2d at 769 (emphasis supplied, footnote omitted).

Moreover, our discussion of the possible verdicts flowing from an imperfect self-defense instruction supports the conclusion that it is the subjective, honestly-held belief that negates malice:

A proper instruction when such evidence is present would enable the jury to reach one of several verdicts: (1) if the jury concluded the defendant did not have a *subjective belief* that the use of deadly force was necessary, its verdict would be murder; (2) if the jury concluded that the defendant had a *reasonable subjective belief,* its verdict would be not guilty; and (3) if the jury concluded that the defendant *honestly believed* that the use of force was necessary but that this subjective belief was unreasonable under the circumstances, then its verdict would

be guilty of voluntary manslaughter. The reason courts have reached the third conclusion is that the conduct of the defendant in these circumstances negates the presence of malice, a prerequisite to a finding of murder, but the defendant is nevertheless the blame for the homicide and should not be rewarded for his unreasonable conduct.

301 Md. at 500–501, 483 A.2d at 769 (emphasis added). From the foregoing, it follows that the defendant's subjective belief in the need for self-defense is a matter for determination by the jury, and it is that determination that is dispositive of the murder charge. If the jury finds that the defendant had no such subjective belief, he or she is guilty of murder. If it finds that he or she had that subjective belief, he or she is either not guilty or guilty of manslaughter, depending upon the reasonableness of the belief. Because the difference between murder and manslaughter is the presence or absence of malice, *see Faulkner*, 301 Md. at 485, 483 A.2d at 761, and it is the reasonableness of the defendant's belief that determines whether the defendant is completely exonerated, or only partially so, it logically follows that it is the defendant's subjective belief that "negates malice."

The *Flannel* court recognized that a defendant's culpability for a homicide is "mitigated" when the defendant lacks the requisite *mens rea* for murder. 25 Cal.3d at 680, 603 P.2d at 7, 160 Cal.Rptr. at 90. Addressing the question of which crime, as between murder and manslaughter, a defendant commits when acting on a belief, honestly held, but unreasonable, the Court referred to *People v. Wells*, 33 Cal.2d 330, 202 P.2d 53 (1949), which it characterized as standing for the proposition that malice, "as a mental state, cannot coexist with such an honest but unreasonable belief in the need to defend oneself." 25 Cal.3d at 675, 603 P.2d at 4, 160 Cal.Rptr. at 87. The *Wells* court noted that,

[i]f he acted only under the influence of fear of bodily harm, in the belief, *honest though unreasonable*, that he was defending himself from such harm by the use of a necessary amount of force, then the defendant, although

he would not be guiltless of crime, would not have committed *that particular aggravated offense* with which he is charged, for the essential element of "malice aforethought" would be lacking.

*Id.* at 245, 202 P.2d at 62–63. (Emphasis added). Thus, an honest, subjective belief, even if unreasonable, is inconsistent with malice:

No matter how the mistaken assessment is made, an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard. Where the awareness of society's disapproval begins, an honest belief ends. *It is the honest belief of imminent peril that negates malice in a case of complete self-defense; the reasonableness of the belief simply goes to the justification for the killing.*

25 Cal.3d at 679, 603 P.2d at 7, 160 Cal.Rptr. at 90 (emphasis added). The Court concluded:

[T]he State has no legitimate interest in obtaining a conviction of murder when, by virtue of defendant's unreasonable belief, the jury entertains a reasonable doubt whether defendant harbored malice. Likewise, a defendant has no legitimate interest in complete exculpation when acting outside the range of reasonable behavior. The vice is the element of malice; in its absence the level of guilt must decline.

*Id.* at 680, 603 P.2d at 7, 160 Cal.Rptr. at 90 (citations omitted).

Finally, the *Faulkner* court's recognition, without reference to the special relationship of manslaughter to murder, that, had the jury found the subjective belief to exist, reduction of the defendant's culpability would have been warranted is further evidence that the subjective belief negates malice. 301 Md. at 500, 483 A.2d at 769. In any event, there is nothing in *Faulkner* to suggest that, to "negate malice," a defendant must produce mitigating or justifying circumstances additional to those tending to prove self-defense or that proof of lack of the requisite

malevolent intent is insufficient. Were the defendant's subjective belief unimportant, it would not have been mentioned as a factor, nor would it have mattered whether it was reasonable. That the *Faulkner* court addressed the existence of the subjective belief and its reasonableness together, does not prevent their being considered separately.

## IV.

When a charged offense requires proof of a special mental state, *i.e.* malice, or a specific intent to cause a particular harm, the State's burden is to prove that special mental state.

> If no specific intent or other special mental element is required for guilt of the offense charged, a mistake of fact will not be recognized as an excuse unless it was based upon reasonable grounds; but even an unreasonable mistake, if entertained in good faith, is inconsistent with guilt if it negates some special element required for guilt of the offense such as intent or knowledge.

*Perkins & Boyce, supra* at 1046 (footnotes omitted).

To be entitled to a self-defense instruction, the defendant initially must produce "some evidence" of an honestly held, subjective belief in the need to defend him or herself. *Sims,* 319 Md. at 553, 573 A.2d at 1323; *Dykes,* 319 Md. at 215, 571 A.2d at 1256, quoting *Simmons v. State,* 313 Md. 33, 39–40, 542 A.2d 1258, 1261 (1988), quoting *State v. Evans,* 278 Md. 197, 207–08, 362 A.2d 629, 635 (1976). In that regard, we have made clear that

> It is hard to imagine a situation where a defendant would be able to produce sufficient evidence to generate a jury issue as to perfect self defense but not as to imperfect self-defense. It seems clear to us that if the reasonableness of a defendant's belief is at issue, as it is on self defense, *a fortiori,* the existence of that belief is also at issue. Therefore, the jury must reject the reasonableness

of the defendant's belief as well as the existence of that belief to find the defendant guilty of murder.

*Faulkner*, 301 Md. at 502–03, 483 A.2d at 770. The ultimate burden of proving lack of justification or mitigation is on the State. *Sims*, 319 Md. at 553, 573 A.2d at 1323; *Dykes*, 319 Md. at 216, 571 A.2d at 1256–57; *Evans*, 278 Md. at 208, 362 A.2d at 629.

Implicit in *Sims*, 319 Md. at 554, 573 A.2d at 1323, *Dykes*, 319 Md. at 216, 571 A.2d at 1256, and our discussion, in *Faulkner*, 301 Md. at 482, 483 A.2d at 768, of *Cunningham*[7] is that generation of imperfect self-defense requires production of some evidence of each element of self-defense except one—that the subjective honest belief was reasonable. The defendant, in other words, must produce some evidence of his or her fear of imminent death or serious bodily harm from the victim, that he or she was not the aggressor and that the force used was not excessive, etc.

Where the charged offense requires proof of malice, because an honest, subjective belief in the necessity to defend oneself is inconsistent with malice, a trier of fact's

---

7. *Cunningham v. State*, 58 Md.App. 249, 473 A.2d 40, *cert. denied*, 300 Md. 316, 477 A.2d 1195 (1984), is explicit in this regard:

The appellant's mistake is to look at a single element of the defense in a vacuum. Imperfect self-defense, of course, stands in the shadow of perfect self-defense. If the appellant's belief, reasonable or unreasonable, in the necessity to kill to preserve his own life is but one of the elements as to which he has the burden of producing a *prima facie* case in order to generate a genuine jury question, even a reasonable belief in the necessity to kill, would, standing alone, avail him naught,

*id.* at 254–55, 473 A.2d at 43, and:

If a defense requires proof of A, B, and C, proving half of C for mitigation rather than all of C for exculpation, still presupposes the proof of A and B. Absent proof of A and B, whatever happens to C, in whole or in part, is utterly immaterial. Although as a lesser defense, the partial proof of an element may still stand as a pale reflection of the fuller proof of that element, it can never forgive the total failure of proof as to other necessary elements. The appellant here would have his partial proof of one component of self-defense divert attention from his utter failure to produce even a *prima facie* case as to the other necessary element.

*Id.* at 257, 473 A.2d at 44.

finding that a defendant had such a belief is tantamount to finding the defendant not guilty of the charged offense. The honesty of the belief, moreover, is informed by the surrounding circumstances, *i.e.*, who was the aggressor, the amount of force used, whether the defendant retreated, or could have, etc. So, too, is its reasonableness; because the reasonableness of the defendant's subjective belief focuses on the justification for the action, the trier of fact's reasonableness determination also, necessarily, will be made from its assessment of the surrounding circumstances. A finding that the belief was objectively unreasonable, of necessity, will mean that at least one element of self-defense was not established. Once some evidence of the subjective belief is produced, the reasonableness determination is for the trier of fact.

That self-defense is generated does not mean that it has been established; generation means simply that the prosecution must negate the defense, either altogether, by proving the non-existence of the subjective belief, or partially, by proving its unreasonableness, *i.e.* that the defendant acted without justification or mitigation. *Mullaney v. Wilbur*, 421 U.S. 684, 702, 95 S.Ct. 1881, 1891, 44 L.Ed.2d 508, 521–22 (1975); *Dykes*, 319 Md. at 215–16, 571 A.2d at 1256; *Simmons*, 313 Md. at 39, 542 A.2d at 1261; *Thomas v. State*, 301 Md. 294, 315, 483 A.2d 6, 17, *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *Tichnell v. State*, 287 Md. 695, 714–15, 415 A.2d 830, 840, *cert. denied*, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846, *reh'g denied*, 467 U.S. 1268, 104 S.Ct. 3564, 82 L.Ed.2d 865 (1984); *Evans*, 278 Md. at 207–08, 362 A.2d at 635–36. Thus, a defendant may be convicted of murder even though he or she generates self-defense if the jury finds that he or she did not have a subjective, honest belief in the necessity to defend him or herself. On the other hand, a jury finding that the defendant had such a belief precludes a murder conviction, such a belief, being inconsistent with the required proof for murder, even though the jury has also determined that the belief was unreasonable.

The reasonableness of the subjective belief addresses the justification of the defendant's act. *Flannel*, 25 Cal.3d at 680, 603 P.2d at 7, 160 Cal.Rptr. at 90. *See Winner v. State*, 144 Md. 682, 125 A. 397 (1924). An objectively reasonable belief is deemed sufficient to justify an action; conversely, an objectively unreasonable belief neither justifies nor excuses it.

Thus, in the homicide context, neither of two defendants is guilty of murder when the evidence establishes that one acted in self-defense and that the other acted in imperfect self-defense. Because the subjective belief is identical for self-defense and imperfect self-defense, neither will have acted maliciously; consequently, insofar as the murder charge is concerned, they are treated identically. On another level, however, they may be, and are, treated differently. When the issue is whether their actions, based on a concededly honest belief, were justified, complete exoneration is appropriate only in the case of the defendant who acted reasonably. In other words, rather than mitigate murder to manslaughter, proof of the defendant's subjective belief, reduces the defendant's culpability. The requirement that the belief be reasonable is addressed, not to murder, the charged offense, but to any other offense, conviction of which does not require proof of malice.

The same analysis applies in the non-homicide context. Self-defense, as a defense, is not limited to homicide and its shadow forms. *See, e.g., Barnhard v. State*, 325 Md. 602, 614, 602 A.2d 701, 707 (1992) (self-defense may be used to resist illegal arrest); *Guerriero v. State*, 213 Md. 545, 549, 132 A.2d 466, 467–68 (1957) (self-defense proper by third person closely related to or associated with one attacked); *Bryant*, 83 Md.App. at 245–46, 574 A.2d at 33 (self-defense applicable to assault crimes generally); *Jacobs v. State*, 32 Md.App. 509, 512–14, 363 A.2d 257, 259 (1976) (Defense of self-defense applies to all offenses from simple to first degree murder). *See also United States v. Lewis*, 780 F.2d 1140, 1142–43 (4th Cir.1986). Because self-defense is a defense to non-homicide offenses requiring proof of malice

and imperfect self-defense is a shadow form of self-defense, there is no rational basis for not permitting imperfect self-defense to be a defense to non-homicide offenses. Whether it is self-defense or imperfect self-defense that is generated, the existence of a subjective, honest belief of imminent peril must be proven; it is, after all, the subjective belief, not its reasonableness, that negates malice.

As we have seen, to act maliciously, one must act with intent to cause the harm charged and without justification or excuse. *Brown v. State*, 285 Md. at 474, 403 A.2d at 792. One who acts in the belief, sincerely and honestly held, that he or she is in imminent peril of death or grievous bodily injury acts in the belief that his or her actions are justified or excused, hence, without malice. A finding, to that effect, by the trier of fact precludes the defendant's conviction of a crime requiring proof of malice. It does not, however, prevent the trier of fact from further concluding that the defendant's belief was unreasonable and, thus, not justified. In the latter event, the defendant could be convicted of any charged offense, whether or not lesser included, or any lesser included offense, whether or not charged, *see Graham v. State*, 325 Md. 398, 416, 601 A.2d 131, 140 (1992); *Hagans v. State*, 316 Md. 429, 450–52, 559 A.2d 792, 802–03 (1989), which does not require proof of malice. While in the case of a murder indictment, the State's failure to prove malice may result in conviction of manslaughter,[8]

---

**8.** Manslaughter may be either voluntary or involuntary. 2 Charles E. Torcia, *Wharton's Criminal Law*, § 152 (14th ed. 1979). We said in *Faulkner*, 301 Md. at 503, 483 A.2d at 770, that imperfect self-defense reduces murder to voluntary manslaughter, apparently assuming that the defendant intended to kill the victim. It is conceivable that one who kills in self-defense *intends* to kill. That need not be so, however. While, for purposes of determining whether malice exists, the focus is on the honesty of the actor's perceived need to defend him or herself to the exclusion of any consideration of how the actor intends to accomplish that defense, the focus must shift when the inquiry involves determining which offense, as between voluntary and involuntary manslaughter, the defendant committed. The honest belief in the need to defend oneself and the intent to kill may certainly co-exist. Indeed, because the latter may be a creature of the necessity spawned

in the case of an aggravated assault requiring proof of malice, as in the present case, a failure of proof may result in conviction of simple assault.

Thus, I have no quarrel with the majority's observation, *see* op. at 234, that "A defendant may intend the exact result he brings about, but be entitled to mitigation because of circumstances that caused him to act." That is certainly true when the defense is provocation; in that situation, it is a policy decision whether to permit mitigation of the defendant's offense. *See* n. 5, *supra.* I also agree that "a defendant not entitled to mitigation may present as a defense evidence of a[n] honestly held though objectively unreasonable belief that is inconsistent with the specific intent required to convict." Op. at 234. That is precisely what occurs when imperfect self-defense is offered as a defense. I do not agree, however, that no separate imperfect self-defense instruction is necessary. Malicious wounding requires proof of malice, in addition to the intent to disable. The former, if not the latter, is implicated when the defense of imperfect self-defense is interposed and the jury ought to be told that it is.

## V.

In *Watkins v. State,* 328 Md. 95, 106, 613 A.2d 379, 384 (1992), the defendant had been convicted of, *inter alia,* unlawful shooting with intent to disable, one of the actions proscribed by Maryland Code (1957, 1992 Repl.Vol.) Article

by the former, they are significantly interrelated. With what intent the defendant acted is a matter to be determined by the jury. Should it determine that the defendant had an honest subjective belief in the need to defend him or herself and, also, intended to kill the victim, the defendant is guilty of voluntary manslaughter. *Bruce v. State,* 317 Md. 642, 646, 566 A.2d 103, 105 (1989); *Cox v. State,* 311 Md. 326, 331–32, 534 A.2d 1333, 1335–36 (1988); *Palmer v. State,* 223 Md. 341, 343, 164 A.2d 467, 468 (1960); Torcia, *supra,* § 166. On the other hand, should the jury determine that the defendant did not intend to kill the victim, then the defendant is guilty of involuntary manslaughter.

27, § 386.[9] As the majority points out, we observed that the defendant's imperfect self-defense "argument fails because the defense of imperfect self-defense does not apply to and is not available to mitigate any of the crimes of which the defendant was convicted." *Id.* The issue presented in this case was not there presented, however.

The Court of Special Appeals and the California intermediate appellate court have addressed this precise issue, reaching different results. In *Bryant,* 83 Md.App. at 245, 574 A.2d at 32, the intermediate appellate court rejected imperfect self-defense as a defense to statutory maiming, assault with intent to disable, and assault and battery,[10] holding: "Outside of homicide law, the concept of imperfect self-defense does not exist." *Id.* On the other hand, the California intermediate appellate court, in *People v. McKelvy,* 194 Cal.App.3rd, 694, 239 Cal.Rptr. 782 (1987), held, relying on *Flannel,* that an honest, but unreasonable, belief in the need to defend oneself, being inconsistent with malice, negated the state of mind required for mayhem. While recognizing that the "malice" element of mayhem differs from the "malice aforethought" required for murder, the court equated the former with malice in the legal sense, *i.e.*

"(1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is pro-

---

**9.** Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 386 provides:

If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, *or shall unlawfully and maliciously stab, cut or wound any person,* or shall assault or beat any person, with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained, every such offender, and every person counselling, aiding or abetting such offender shall be guilty of a felony and, upon conviction are subject to imprisonment for not more than 15 years. (Emphasis supplied).

**10.** In that trilogy of charges, only one—maiming—requires proof of "malice aforethought", or "malice." *See* Maryland Code (1957, 1992 Rpl.Vol.) Article 27, §§ 385 and 386.

duced or harm of the same general nature, or (b) the wanton and willful doing of an act with awareness of a plain and strong likelihood that such harm may result." 194 Cal.App.3d at 702, 239 Cal.Rptr. at 786, quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, 60 (3rd Ed.1982).

By enacting § 386, the Legislature, proscribed various actions done with intent either to maim, disfigure or disable or to prevent lawful apprehension or detainer. *See State v. Elborn*, 27 Md. 483 (1867); *Hall v. State*, 69 Md.App. 37, 49–50, 516 A.2d 204, 209–10 (1986). Not all of the proscribed actions require, expressly or explicitly, proof of malice. While the attempt to discharge any kind of loaded arm and the stabbing, cutting or wounding of a person specifically requires that in addition to the requisite intent, malice be proven, unlawfully shooting at a person and assaulting a person do not. Because the Legislature used the term "maliciously" in connection with some of the proscribed actions and not others, contrary to the position of the majority—reading "malice" out of the statute—I believe that that term must have a meaning different from "unlawfully," the only other term used to describe those actions. *See State v. Patrick A.*, 312 Md. 482, 487 540 A.2d 810, 812 (1988); *Bridges v. Nicely*, 304 Md. 1, 10, 497 A.2d 142, 147 (1985); *Bd. of Educ. of Garrett County v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982); *Schmidt v. Beneficial Fin. Co.*, 285 Md. 148, 155, 400 A.2d 1124, 1128 (1979); *Police Comm'r v. Dowling*, 281 Md. 412, 419, 379 A.2d 1007, 1011 (1977). *See also Harford County v. Univ.*, 318 Md. 525, 529, 569 A.2d 649, 651 (1990), (the words of the statute are to be given their natural and usual meaning); *Dickerson v. State*, 324 Md. 163, 171, 596 A.2d 648, 652 (1991); *Mayor & City Council of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984), (courts should not resort to strained, subtle, or forced interpretations for the purpose of extending or limiting the operation of a statute); *Newman v. Subsequent Injury Fund*, 311 Md. 721, 723, 537 A.2d 274, 275 (1988), (a statute must be read

so that "no word, phrase, clause or sentence is rendered surplusage or meaningless").

Art. 27, § 386 requires, for conviction, that the victim be wounded, that the wounding be done maliciously, and that it be done with the intent to maim, disfigure or disable. In the case *sub judice*, believing that it had been generated, the court instructed the jury on self-defense. The State took no exception and, thus, the propriety of that instruction is not before us. *See* Maryland Rule 4–325. Notwithstanding that, ordinarily, generation of self-defense means that imperfect self-defense, its shadow form, has also been generated, the court refused the defense request for such an instruction.

This is not an overwhelming case of self-defense. It does not need to be, however, for self-defense to be generated. *Dykes*, 319 Md. at 216–17, 571 A.2d at 1257. All that is required is that there be "some evidence of [the petitioner's] subjective belief that force was necessary to prevent imminent death or serious bodily harm...." *Simmons*, 313 Md. at 39, 542 A.2d at 1261. *See also State v. Martin*, 329 Md. 351, 359, 619 A.2d 992, 995–96 (1993). The defendant testified as to his subjective belief. The court correctly determined that the issue of self-defense was generated. It should also have given an imperfect self-defense instruction. I would reverse and remand for new trial.[11]

---

**11.** I agree that the malicious wounding instruction the court gave was erroneous. I do not agree that the error should be noticed as plain error. "An appellate court, on its own initiative ... may ... take cognizance of any plain error in the instructions material to the rights of the defendant, despite any failure to object." Maryland Rule 4–325(e). *See Rubin v. State*, 325 Md. 552, 568, 602 A.2d 677, 694 (1992); *Sims v. State*, 319 Md. 540, 550, 573 A.2d 1317, 1301 (1990); *Franklin v. State*, 319 Md. 116, 121, 571 A.2d 1208, 1210 (1990); *Dawkins v. State*, 313 Md. 638, 643, 547 A.2d 1041, 1043 (1988); *State v. Hutchinson*, 287 Md. 198, 202, 411 A.2d 1035, 1038 (1980); *Trimble v. State*, 300 Md. 387, 397, 478 A.2d 1143, 1148 (1984); *Squire v. State*, 280 Md. 132, 135, 368 A.2d 1019, 1020 (1977). In *Hutchinson*, 287 Md. at 202–03, 411 A.2d at 1038, the Court stated:

While we do not propose to set forth any fixed formula for determining when discretion should be exercised, we do expect that the appellate court would review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention. We enumerate these factors because we feel they are ordinarily inconsistent with circumstances justifying an appellate court's intervention under § h [of Rule 757, predecessor to 4–325(e)]. In our cases we have characterized instances when an appellate court should take cognizance of unobjected to error as compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.

In *Trimble*, we said that "we would intervene ... only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial."

The error *sub judice* was neither purely technical nor, under the circumstances, the product of trial tactics. It seems to have been the result of *bald inattention*. There is no excuse for the failure to take an exception to the malicious wounding with intent to disable instruction, which explains, perhaps, the petitioner's failure to raise the issue either in the Court of Special Appeals or in this Court. Viewed in the context in which it occurred, therefore, the need to take cognizance of the error is not compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.

The majority points out that the petitioner was acquitted of assault with intent to disable, on proper instructions, and, on erroneous instructions, convicted of malicious wounding. The only apparent basis for the inconsistent verdicts appears to be the State's failure to prove, as the instructions for assault with intent to disable required it to do, that the petitioner acted with the specific intent to disable, an element also common to malicious wounding. *See Apostoledes v. State*, 323 Md. 456, 463–64, 593 A.2d 1117, 1121–22 (1991); *Ferrell v. State*, 318 Md. 235, 241–45, 567 A.2d 937, 940–42, *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990); *Powers v. State*, 285 Md. 269, 288, 401 A.2d 1031, 1042, *cert. denied*, 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979). While I agree that collateral estoppel may well void the malicious wounding conviction, I do not agree that it should be applied on this record. The petitioner may raise the issue on remand, however.